MARY MULLIGAN, as Administratrix of the Estate of BERNARD MULLIGAN, Deceased, Respondent-Appellant, *v.* BERNARD WETCHLER et al., Defendants; TRAFALGAR HOSPITAL, Respondent, and CITY OF NEW YORK, Appellant.

First Department, May 11, 1972.

*Bernard Burstein* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*Joseph Eckhaus* of counsel (*William Scheiner* with him on the brief; *Eckhaus & Eckhaus,* attorneys), for respondent.

*W. Bernard Richland* of counsel (*Frank Durkan* with him on the brief; *Bernstien & Durkan,* attorneys), for respondent-appellant.

NUNEZ, J.  Bernard Mulligan, plaintiff's intestate, a 52-year-old subway motorman, was taken from his home by ambulance to Jewish Memorial Hospital shortly before midnight on July 10, 1962, where a doctor examined him and told his two young sons, who accompanied him, that he could not be admitted there for a lack of a bed.  He was immediately transferred to Fordham Hospital, owned and operated by defendant City of New York.

There was testimony that upon arrival at Fordham Hospital Mulligan was moaning and twisting and complaining of severe pain in his abdomen.  Dr. Sargiss, who examined him was told that the decedent had been transferred by ambulance from Jewish Memorial.  Dr. Sargiss, and the sole medical expert called, both stated that it is the common and accepted practice that in such circumstances the physician at the receiving hospital should ascertain the diagnosis of the remitting hospital and the reasons for the transfer.  Dr. Sargiss also testified that when a patient is so transferred, an ambulance sheet or certificate accompanies the patient.  This certificate is to be delivered to the physician in charge at the receiving hospital and filed.  He stated he did not remember having seen such a document when he examined Mr. Mulligan.  Had the city doctor made inquiry, as he should have done, he would have ascertained that the diagnosis at Jewish Memorial was "Acute Gastroenteritis.  Trichinosis. Appendicitis?"  It appears that in forwarding such certificate with the patient the hospitals are not only following proper accepted practice, but that they are complying with the express

requirements of section 587–1.0 of the Administrative Code of the City of New York which mandates such procedure and further provides that " Such certificate shall be executed in duplicate * * * [o]ne * * * shall be filed in the records of such ·hospital * * * The remaining duplicate shall accompany the patient so removed * * * and be there delivered to the person or official into whose care such patient is turned over. " Most significantly, the Jewish Memorial Hospital duplicate showing the suspected appendicitis diagnosis was produced at ,trial but the city offered no proof as to the existence or nonexistence of such a document in its records.

There was evidence that after a limited examination of five or ten minutes' duration, consisting only of palpating the abdomen and taking deceased's temperature and blood pressure, Dr. Sargiss prescribed a sedative, a stomach soothant and an enema and sent him home at 3:30 A.M. Several hours later, Mulligan was seen at home by a physician who immediately diagnosed the appendicitis and directed his removal to Trafalgar Hospital from where, at his request, he was transferred to Bellevue Hospital. Upon opening his abdomen at Bellevue Hospital, it was discovered that the appendix was perforated in three places. He survived the operation but expired on the 11th post-operative day from complications.

Contrary to what the dissent implies, the unchallenged testimony of plaintiff's expert establishes that it was a radical departure from accepted standard practice not to have ascertained the reason for the transfer from Jewish Memorial Hospital and the diagnosis made thereat and not to have admitted the patient, given an examination, including a blood count and urine analysis, and, after a work-up and evaluation by a surgeon, immediately operate if, in his opinion, there was a possible appendicitis. The record justifies the findings implicit in the jury's verdict that had the city's doctor at Fordham Hospital followed the accepted medical and hospital practice, Mr. Mulligan's illness would not have been fatal.

On this record the trial court properly submitted to the jury the question as to whether Fordham Hospital's admitting physician departed from accepted medical practice and was negligent in turning away Mr. Mulligan under the circumstances, and as to whether there was a causative relationship between the improper conduct and the death. In death actions only slight evidence of liability is required for submission to the jury. (See *O'Neill* v. *Montefiore Hosp.*, 11 A D 2d 132, 133.)

We have carefully examined the city's claim that the trial court erred in refusing to reopen the case to permit expert testimony

proposed by the city five days after all the parties had rested. It appears that on Wednesday morning, February 11, 1970, after the city read into evidence the pretrial deposition of Fordham Hospital by Dr. Sargiss, the city rested. After the luncheon recess defendant Wetchler rested and the city again announced that it rested, and motions were made to dismiss the complaint. The court then announced that since the following day, Thursday, was a holiday, the court would stand in recess until Monday. It was on Monday, February 16, that the city's attorney sought to reopen the case, complaining about his short examination of Dr. Wetchler and stating that when Dr. Wetchler settled his case the city had obtained another unnamed doctor who would give additional testimony. The court properly observed that the application "is much too tardy. You could have advised the Court Wednesday afternoon * * * [or] Friday. Now it is Monday * * * You should have known * * * a long time ago, not after the trial has been closed * * * several days * * * Now, you may be able to find another doctor tomorrow * * * then your adversary should have a right to come in and say, they are going to discover somebody who will refute what your doctor or somebody is going to say." Upon a trial a party is bound to produce all his evidence before he rests and after he has closed his case and rested it is within the discretion of the court whether or not to allow reopening of the case, but such discretion should be sparingly exercised. (See *Barson v. Mulligan*, 77 App Div. 192, 194 [1st Dept., 1902].) Under the circumstances, it cannot be said that the trial court abused its discretion in refusing the city's application.

The trial court properly dismissed the complaint against Trafalgar Hospital. There was no proof of any malpractice or negligence by Trafalgar Hospital. Mr. Mulligan was Dr. Wetchler's private patient. The staff of the hospital was duty bound to follow his orders. On this record they could not have properly intervened in the physician-patient relationship existing between Mr. Mulligan and Dr. Wetchler. (See *Toth* v. *Community Hosp. at Glen Cove*, 22 N Y 2d 255, 264–265.)

Dr. Wetchler, a joint and several tort-feasor defendant, paid plaintiff $75,000 in settlement during trial. In accordance with the court's instructions, the jury determined the full compensatory amount of damages without diminution of the $75,000. Defendant City of New York is entitled to be credited with that sum in partial satisfaction of the damages and the jury should have been so instructed. (See *Bellamy* v. *Prime*, 25 A D 2d 923; *Plummer* v. *McHale*, 15 Misc 2d 35; cf. *Livant* v. *Livant*, 18 A D

2d 383, app. dsmd. 13 N Y 2d 894; see, also, PJI 2:326; and the recently subsequently enacted CPLR 4533-b eff. Sept. 1, 1971, indicating that where there has been payment by a joint tort-feasor, the court should subtract the amount of the payment from the award made by the jury.)

The interest upon the verdict was calculated at 4% per annum instead of the 6% per annum rate as provided by section 3-a of the General Municipal Law, as amended by chapter 1102 of the Laws of 1969. The rate of interest to be added to a verdict or judgment in a death action is determined by the statutory rate in existence at the time of the verdict or judgment and applied as of the date of death forward. (See *Toomey* v. *New York City Tr. Auth.*, 10 A D 2d 728, affd. 8 N Y 2d 970; *Salter* v. *Utica & Black Riv. R.R. Co.*, 86 N. Y. 401, 403; *Myers* v. *Town of Harrison*, 438 F. 2d 293 [2d Cir., 1971].)

For the foregoing reasons the judgment entered March 26, 1970 in Supreme Court, Bronx County, should be modified on the law to the extent of reducing the judgment by $75,000 with the remaining balance thereof bearing interest from the date of death at the rate of 6% per annum, and otherwise affirmed, without costs or disbursements to any party. Settle order on notice.

MURPHY, J. (dissenting in part). While I would agree with the majority that if the verdict against the city was supportable, it should be reduced by the $75,000 settlement and bear interest at 6% rate, I believe the judgment appealed from should be reversed and a new trial directed on the claim against said defendant.

It appears that decedent's abdominal pain commenced shortly after he ate a stale sandwich. While at Fordham Hospital his symptoms were abdominal pain, some diarrhea, 99.8 temperature, normal blood pressure and a soft abdomen. Even plaintiff's expert conceded that such a history was more typical of gastroenteritis or some adverse reaction to the sandwich than of appendicitis. Indeed, he testified that diarrhea was atypical, and a soft abdomen contraindicative, of appendicitis; and that, on these symptoms alone, the failure of Fordham Hospital's doctor to admit decedent for further tests was not a departure from accepted medical standards. Moreover, even if we assume *arguendo,* that decedent had appendicitis, and not gastro-enteritis, while being examined at Fordham Hospital, liability could not be predicated on any honest error of professional judgment (*Bullock* v. *Parkchester Hosp.*, 3 A D 2d 254; *Battistella* v. *Society of New York Hosp.*, 9 A D 2d 75).

Accordingly, plaintiff's claim against the city must rest solely on the question of whether there was sufficient evidence to support a finding that Fordham Hospital knew of Jewish Memorial Hospital's tentative diagnosis of possible appendicitis; and that its failure to admit him, with such knowledge, was a deviation from accepted medical practice. In order to prove such knowledge plaintiff refers to several obviously equivocal affirmative responses by Fordham's doctor to certain inquiries as to whether or not he knew that decedent had been transported from Jewish Memorial Hospital to his institution by ambulance. Indeed, since I find nothing in any of the hospital records or in the testimony of decedent's two sons, who were with him at Fordham, to indicate any communication between the two hospitals, were it not for the doctor's aforesaid testimony in his examination before trial, I would be inclined to recommend dismissing the complaint against the city altogether and not merely to conclude that the judgment against it is against the weight of the evidence.

Additionally, I believe a new trial is required because of the trial court's refusal to permit the city, after resting, upon application made the very next court day and prior to any further proceedings before the jury, to reopen its case to present an expert witness then present in the courtroom. The city was obviously surprised by Dr. Wetchler's sudden decision to settle his case; and, having been deprived of the opportunity of eliciting further information from him, it should have been permitted to present its witness. In a close case such as this, where there was no factual basis for any claim of estoppel or laches, the trial court's refusal to grant the request was an abuse of discretion as a matter of law.

Accordingly, the judgment appealed from should be modified to the extent of reversing that portion thereof as grants judgment against appellant the City of New York and a new trial ordered as to said defendant; and otherwise affirmed.

McGivern, J. P., and Capozzoli, J., concur with Nunez, J.; Murphy, J., dissents, in part, in an opinion in which Markewich, J., concurs.

Judgment, Supreme Court, Bronx County, entered on March 26, 1970, modified, on the law, to the extent of reducing the judgment by $75,000 with the remaining balance thereof bearing interest from the date of death at the rate of 6% per annum, and otherwise affirmed, without costs and without disbursements.

Settle order on notice.