■ R. H. SANBAR PROJECTS, INC., Plaintiff, and DAG HAMMARSKJOLD TOWER, N. V., Appellant, v GRUZEN PARTNERSHIP et al., Respondents.—Order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered on or about March 30, 1988, which, *inter alia,* granted the motion of defendant Philip Birnbaum & Associates, P. C. for an order dismissing the complaint of plaintiff Dag Hammarskjold Tower, N. V. as against it, pursuant to CPLR 3211 (a) (7), and the order of the same court, entered on or about October 18, 1988, which granted the motion by defendant The Gruzen Partnership dismissing the complaint of plaintiff Dag Hammarskjold Tower, N. V. as against it, pursuant to CPLR 3211 (a) (7) and 3212, are unanimously reversed, on the law, to the extent appealed from, and the complaint reinstated against both defendants, with costs and disbursements payable to appellant.

Plaintiff Dag Hammarskjold Tower, N. V. (DHT) owns the premises on Second Avenue between 46th and 47th Streets in

Manhattan. It retained coplaintiff R. H. Sanbar Projects, Inc. (Sanbar) as its developer and coordinator to build a residential condominium apartment building at that location. The parties entered into a project development agreement which provided, *inter alia,* that Sanbar was to perform all of its duties under the contract subject to DHT's direction and control.

The agreement also allowed Sanbar, *inter alia,* to retain qualified architects and engineers. Sanbar, by a letter agreement, hired defendant Philip Birnbaum & Associates, P. C. (Birnbaum) to assist in the development of layouts for the floors and the apartments and to provide general review and guidance with respect to maximizing the floor-area bonus that was available to the developer and owner for the construction of a public plaza. Defendant The Gruzen Partnership (Gruzen) was the main design architect for the buildings.

The Department of Buildings subsequently rejected plaintiffs' application for a certificate of occupancy and informed them that the floor-area bonus would be unavailable. No sales of units in the building could be made without the certificate of occupancy, and the plaintiffs had to redesign the public plaza and reconstruct part of the building at additional cost.

Consequently, the plaintiffs commenced this lawsuit. As a first cause of action, plaintiffs sought damages from the main design architect, Gruzen, based upon its negligent design of the public plaza, which failed to meet the statutory requirements which would have entitled the plaintiffs to the floor-area bonus. Plaintiffs' second cause of action sought damages from defendant Birnbaum based upon its breach of the written retainer agreement, in that it failed to provide proper review and advice regarding the rules, regulations and laws applicable to the public plaza and the floor-area bonus plaintiffs sought.

Birnbaum moved for an order dismissing the complaint of DHT for failure to state a cause of action pursuant to CPLR 3211 (a) (7) and for an order granting it summary judgment against DHT pursuant to CPLR 3212. The IAS court granted the motion to dismiss on CPLR 3211 (a) (7) grounds.

Thereafter, defendant Gruzen moved for an order dismissing the complaint of DHT pursuant to CPLR 3211 (a) (7) and for summary judgment against DHT pursuant to CPLR 3212 and the IAS court granted Gruzen's motion for summary judgment as against DHT.

The order of March 30, 1988 ostensibly dismissed the complaint of DHT as against Birnbaum pursuant to CPLR 3211 (a)

(7) for failure to state a cause of action. It did not consider the alternative CPLR 3212 ground. The IAS court made findings that there was no nexus between DHT and Birnbaum and that DHT was in fact not a third-party beneficiary of the agreement between Sanbar and Birnbaum. It also reached these conclusions based upon "[a] close examination of the DHT-Sanbar contract" and the agreement between Birnbaum and Sanbar.

Initially, we note that the complaint, however inartfully drawn, does state a cause of action sufficient to withstand a motion pursuant to CPLR 3211 (a) (7) on behalf of DHT. A complaint should not be dismissed on a pleading motion so long as, when the plaintiff's allegations are given the benefit of every possible inference, a cause of action exists (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634). Affidavits and other evidence may be used freely to preserve inartfully pleaded but potentially meritorious claims, and the court's attention should be focused on whether the plaintiff has a cause of action rather than on whether he has properly stated one (*supra*, at 636).

The complaint alleges that DHT is the owner of the premises and Sanbar is the developer. While not specifically alleging that an agency relationship existed, the complaint expressly alleges that Sanbar entered into a retainer agreement with Birnbaum and that DHT consented to it. Examination of the affidavits and the agreement between DHT and Sanbar submitted upon the motion shows that an agency relationship between the plaintiffs is sufficiently pleaded so as to establish the necessary privity between DHT and Birnbaum.

The IAS court had before it the project development agreement and the retainer agreement between Sanbar and Birnbaum. The project development agreement does have some evidence of the existence of an agency relationship between DHT and Sanbar. Thus, article V of this agreement, providing that Sanbar is to perform its duties subject to the direction and control of DHT, notes, *inter alia*, "It is understood that the Developer [Sanbar] will function as the Owner's [DHT] agent". While the retainer letter between Birnbaum and Sanbar does not indicate any agency relationship, an affidavit of a principal of Sanbar was submitted stating that oral representation was made to Birnbaum that Sanbar was DHT's agent.

Even if this motion is considered one for summary judgment, whether an agency relationship existed with respect to

Birnbaum's contract and whether or not Birnbaum had knowledge of DHT's interest in the project and/or direct contact with DHT so as to establish a sufficient nexus between them are questions of fact which require further discovery.

Defendant Birnbaum contends that DHT lacked privity with it and was not a third-party beneficiary of the contract between Birnbaum and Sanbar, as a matter of law. However, the cases cited by defendant *(see, e.g., Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652) are inapposite. They uniformly deal with the situation where the subcontractor is seeking to hold the owner or developer liable for payment to it based on the agreement between the owner/developer and the general contractor. These cases declined to hold the owner/developer liable to the subcontractor or to find that the subcontractor is a third-party beneficiary of the contract between the owner/developer and the general contractor because, *inter alia,* the subcontractor is not a foreseeable beneficiary.

Here, to the contrary, it is the owner claiming to be a third-party beneficiary of the contract between the developer, who it contends was its agent, and the architect/subcontractor. The performance by Birnbaum "was manifestly to be to the direct benefit of the owner of the development. It is almost inconceivable that these professional engineers or architects who render their services in connection with a major construction project would not contemplate that the performance of their contractual obligations would ultimately benefit the owner of that development" *(Key Intl. Mfg. v Morse/Diesel, Inc.,* 142 AD2d 448, 455).

With respect to Gruzen, DHT alleged in its pleadings that Sanbar, as DHT's developer, entered into an agreement with Gruzen to which DHT consented. Again, no agency relationship is expressly alleged. However, examination of the other relevant documents before the IAS court shows that, as with Birnbaum, a sufficient showing of an agency relationship is made to raise a question of fact as to whether or not there was privity between DHT and Gruzen.

Examination of the standard form of agreement between owner and architect (the contract between Sanbar and Gruzen) shows that Sanbar is listed as owner/project developer. A footnote states that " 'Owner' " shall be construed to be "Developer, R.H. Sanbar Projects Inc.". However, a typewritten rider attached to the agreement states at section 15.9 that payment is conditioned on receipt of funds from DHT,

which is explicitly acknowledged to be the owner of the project.

The owner's consent states that it was executed by DHT as owner "to" The Gruzen Partnership. It states, *inter alia:*

"The Owner has engaged R. H. Sanbar Projects, Inc. (hereinafter called the 'Developer') to improve the Premises, and the Developer desires to retain the Architect to perform architectural and related services for such improvement of the Premises.

"NOW, THEREFORE, the Owner hereby consents to the performance by the Architect for the Developer of".

Further a letter sent by Gruzen to the New York State Department of Law, entitled "CERTIFICATION OF SPONSOR'S ARCHITECT", was sent by Gruzen on behalf of the "Sponsor" noting that "[t]he sponsor of the offering plan * * * retained our firm". The condominium offering plan lists only DHT as the sponsor.

Thus, while Sanbar may have initially contacted Gruzen, Gruzen knew that DHT was the owner *(see, Key Intl. Mfg. v Morse/Diesel, Inc., supra)*. The filings by Gruzen on behalf of DHT as sponsor and the owner's consent clearly indicate that some nexus was created between Gruzen and DHT raising, at the least, a question of fact with respect to the issue of privity.

The IAS court's reliance on the provision of Gruzen and Sanbar's contract barring enforcement by nonparties (§ 13.2) was misplaced in view of the project development agreement between Sanbar and DHT which, as noted *supra,* evidences an agency relationship between DHT and Sanbar. Again, this raised an issue of fact as to whether DHT was a third-party beneficiary of the Gruzen-Sanbar agreement by virtue of an agency relationship with Sanbar.

We agree a different situation would be presented, and a different result mandated, if Gruzen had no knowledge of who it was ultimately working for, at the outset. As with Birnbaum, the situation here is different from those cases where a subcontractor seeks payment from an owner by virtue of its contract with the general contractor. The subcontractor is not a foreseeable beneficiary of the contract between an owner and a general contractor *(Port Chester Elec. Constr. Corp. v Atlas, supra)*. Here, however, DHT may have been a foreseeable and intended beneficiary of the Gruzen-Sanbar agreement *(see, Key Intl. Mfg. v Morse/Diesel, Inc., supra)*. Concur—Ross, J. P., Asch, Kassal, Ellerin and Smith, JJ.