**MEDICAL RESEARCH ASSOCIATES, P.C., Plaintiff,**

v.

**MEDCON FINANCIAL SERVICES, INC. F/K/A Allmed Financial Corp., Defendant.**

**No. 01 CIV. 6249 CMLMS.**

United States District Court, S.D. New York.

March 25, 2003.

644

Jacob E. Amir, Law Office, Adam J. Feldman, New York City, for Plaintiff.

Robert F. Diubaldo, Hoey, King, Toker & Epstein, New York City, for Defendant.

MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Medical Research Associates, P.C. ("Medical Research") sues defendant Medcon Financial Services, Inc. ("Medcon") for breach of contract, negligence, breach of its fiduciary duties, and tortious interference with contract. Medcon moves for summary judgment on all of plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Medical Research cross-moves for summary judgment on its breach of contract claim.

For the following reasons, plaintiff's motion is denied and defendant's motion is denied in part and granted in part.

## FACTS

Medical Research is a group of New York physicians organized as a New York professional corporation. [Plaintiff's 56.1 Statement ¶ 4; Defendant's 56.1 Statement ¶ 1]. Medcon is a New Jersey corporation that provides administrative, billing, and collection services to physicians and health care providers. [Defendant's 56.1 Statement ¶ 6].

On or about July 1, 1996, Medical Research entered into a contract (the "1996 Contract") with Allmed, a subsidiary of a New York health care provider named Anthem, Inc. In 1998, Medcon purchased a set of assets from Allmed that included the 1996 Contract. [Defendant's 56.1 Statement ¶ 5].

The 1996 Contract provided that Allmed (and subsequently, as Allmed's successor-in-interest, Medcon) would collect information from Medical Research regarding its

treatment of patients, process the information through its computer system, and submit the information to respective insurance providers for reimbursement. [Plaintiff's 56.1 Statement ¶ 2, Ex. 4; Defendant's 56.1 Statement ¶ 11]. The effective date of the contract was from July 1, 1996 to June 30, 1999, renewable automatically for an additional two year term unless either party terminated it in writing at least ninety days prior to July 1, 1999. [Plaintiff's 56.1 Statement ¶ 2, Ex. 4].

In practice, Medical Research provided the patient information in the form of "charge tickets." [Plaintiff's 56.1 Statement ¶ 2; Defendant's 56.1 Statement ¶ 11]. Medcon's messengers picked up the charge tickets, and Medcon entered the information into its computer system. [Plaintiff's 56.1 Statement ¶ 3; Defendant's 56.1 Statement ¶ 11]. Upon entry of the information from the charge tickets, the computer system automatically generated a "batch processing number." A Medcon employee would then attach a "batch cover sheet" to the group of charges entered into the system and record onto the cover sheet the batch number, the date of entry into the system, and the amount due. [Plaintiff's 56.1 Statement ¶ 4]. Medcon would then forward the information entered into the system to respective insurance providers. [Plaintiff's 56.1 Statement ¶ 5; Defendant's 56.1 Statement ¶ 11].

In a letter dated July 13, 1999, Medcon notified Medical Research that it was terminating its services under the 1996 Contract. [Defendant's 56.1 Statement ¶ 12, Ex. J]. The parties then entered into an agreement (the "1999 Agreement")— through a letter dated November 3, 1999— finalizing the termination of their relationship. [Plaintiff's 56.1 Statement ¶ 8, Ex. 10, Defendant's 56.1 Statement ¶ 13, Ex. L]. The 1999 Agreement provided that Medcon was to cease all collection and administrative efforts for Medical Re-

search claims dated after September 30, 1999, and that Medcon was to process all pre-September 30 claims that it received prior to October 31 before November 30. [Plaintiff's 56.1 Statement ¶ 8, Ex. 10; Defendant's 56.1 Statement ¶¶ 15–16, Ex. L].

In addition, Medcon was to forward— either directly to Medical Research or to its new billing company, Creative Physician Management—any claims that it received outside the deadlines set forth in the 1999 Agreement. [Plaintiff's 56.1 Statement ¶ 8, Ex. 10; Defendant's 56.1 Statement ¶ 17, Ex. L]. Pursuant to those terms, Medical Research agreed "to release Medcon from their obligations under the billing service agreement currently in effect, and to pay Medcon for all services rendered under this agreement up to and including collections received through November 30, 1999, in accordance with the payment services specified in the billing services agreement (subject to the adjustments discussed above)." [Plaintiff's 56.1 Statement, Ex. 10]. Accordingly, Medical Research continued (between July 1 and September 30, 1999) to provide medical services to its patients and forward the "charge tickets" to Medcon. [Plaintiff's 56.1 Statement ¶ 10].

Medical Research alleges that after the termination of the parties' relationship it learned that Medcon had not processed a substantial number of claims. [Plaintiff's 56.1 Statement ¶ 12]. Specifically, Medical Research claims that insurance providers did not receive from Medcon claims for patients Medical Research treated during the summer of 1999.

## DISCUSSION

### I. Summary Judgment Standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts

warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## II. Choice of Law

■ A federal court sitting in New York must apply New York's choice of law rules when its jurisdiction is based on diversity. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, two principles of New York choice of law doctrine seem to run counter to each other. First, "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected

has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir.2000) (citing *International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir.1996)). The 1996 Contract provides: "This agreement shall be governed by the law of the State of Indiana." [Plaintiff's 56.1 Statement, Ex. 4, at ¶ XI].

New York courts have also held, however, that if the parties' briefs assume that New York law controls, such "implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quoting *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989)). Here, both parties apply New York law in their briefs. Medcon does so after a discussion and application of New York choice-of-law rules. Medical Research does so with no such discussion.

This contradiction seems to arise from confusion regarding whether plaintiff's breach of contract action arises from an alleged breach of the 1996 Contract or the 1999 Agreement. Medical Research does not directly address this issue, but seems to implicitly argue that Medcon breached the 1996 Contract. Medcon argues that the 1999 Agreement constituted an accord, and that its performance pursuant to the 1999 Agreement constituted satisfaction.

■ While the 1996 Contract contains a choice-of-law clause, the 1999 Agreement does not. Thus, insofar as the 1999 Agreement contains no choice-of-law clause and the parties have implicitly consented to the application of New York law, New York law applies to construction of that agreement. *See, e.g., American Fuel Corp. v. Utah Energy Development Co., Inc.*, 122 F.3d 130, 134 (2d Cir.1997) ("[W]here the parties have agreed to the application of

the forum law, their consent concludes the choice of law inquiry."). I must apply Indiana law, however, to any construction of the 1996 Contract.

 In addition, I must address what jurisdiction's laws applies to plaintiff's torts claims, because "under New York's choice of law rules, the law of different jurisdictions can apply to the tort claims and the contract claims in a given suit." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir.1997). In *Golden Pacific Bancorp. v. FDIC*, 273 F.3d 509 (2d Cir.2001), plaintiff sued defendant for breach of contract, breach of fiduciary duty, unjust enrichment, and corporate waste. Because the parties' briefs assumed that New York substantive law governed, the Second Circuit applied New York law to the contract and tort claims. *Id.* at 514 n. 4, 519–20. Here, the parties' briefs assume that New York law applies to the contract and tort law claims. I therefore find that New York law applies.

### III. Both Parties' Motions for Summary Judgment on Plaintiff's Breach of Contract Claim are Denied

Medcon argues that (1) the 1999 Agreement constituted an accord· and that no genuine issue of fact exists as to whether it tendered satisfaction; and (2) no genuine issue of fact exists as to whether Medical Research suffered damages. Medical Research argues that no genuine issue of fact exists as to whether Medcon breached the 1996 Contract.

 Under New York law, "[a]n accord is an agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim." *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383, 604 N.Y.S.2d 900, 905, 624 N.E.2d 995, 1000 (1993); *see also May Dep't Stores Co. v. International Leasing Corp., Inc.*, 1 F.3d 138, 140 (2d Cir.1993);

*Sudul v. Computer Outsourcing Services, Inc.*, 917 F.Supp. 1033, 1047 (S.D.N.Y. 1996). The execution of the agreement is called satisfaction. "If the satisfaction is not tendered, the obligee may sue under the original claim or for breach of the accord." *Denburg*, 82 N.Y.2d at 383, 604 N.Y.S.2d at 905, 624 N.E.2d at 1000.

 It is often difficult to distinguish between an executory accord and a novation. *See, e.g., National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622, 643 (S.D.N.Y.1978), aff'd, 597 F.2d 314 (2d Cir.1979). While a novation is "an agreement for an existing obligation to be extinguished immediately by the acceptance of a new promise," a new agreement constitutes an accord if the parties intended that under the new agreement "an existing claim [would] be discharged in the future by the rendition of a substituted performance." *May Dep't Stores Co.*, 1 F.3d at 140 (internal citations omitted).

 Here, I find that the 1999 Agreement constituted an accord. The undisputed facts establish that Medcon informed Medical Research of its desire to terminate the contract less than ninety days prior to July 1, 1999. As a result, the 1996 Contract had already automatically renewed for a two year period and any failure to perform under the 1996 Contract would have constituted a breach of contract. Medical Research and Medcon then entered into an agreement (the 1999 Agreement) whereby Medical Research agreed that any future claim would be discharged by the rendition of the substituted performance set forth in the 1999 Agreement. In other words, Medical Research agreed, "to release Medcon from their obligations under the billing service agreement currently in effect" if Medcon satisfied the terms of the 1999 Agreement. [Plaintiff's 56.1 Statement, Ex. 10].

■ Thus, I must determine whether a genuine issue of fact exists as to whether Medcon tendered satisfaction of the accord—the 1999 Agreement. The determinative issue is really whether Medcon processed the claims Medical Research submitted to it between July 1 and September 30, 1999. Failure to do so would constitute a failure to tender satisfaction, in which case Medical Research could sue for breach of either the 1996 Contract or the 1999 Agreement.

In support of its motion, Medcon relies primarily on the analyses conducted by two experts it hired. Those experts conclude that there is no evidence that Medcon failed to process claims with the insurance companies. [Defendant's 56.1 Statement ¶¶ 23, 26]. In response, Medical Research argues that (1) the expert that it hired concluded that Medcon failed to process the overwhelming claims it forwarded to Medcon; (2) 452 batch sheets that Medcon produced, totaling $1,995,223.63 in claims, provide evidence that Medcon received charges from Medical Research; and (3) a tremendous shortfall in Medical Research's revenue, as compared to the same months during the prior year, provides evidence that Medcon failed to process the claims. The evidence that the parties offer precludes me from granting summary judgment for either of them. A genuine issue of material fact exists as to whether Medcon complied with the terms of the 1999 Agreement.

This same evidence also precludes summary judgment on the basis that Medical Research cannot prove that it suffered damages, an essential element of a cause of action for breach of contract. *See, e.g., First Investors Corp. v. Liberty Mut. Ins. Corp.,* 152 F.3d 162, 168 (2d Cir.1998). The issue of whether Medcon tendered satisfaction is intertwined with the question of whether Medical Research suffered damages. And the evidence before me—

for example Medical Research's expert testimony and the 452 "batch cover sheets"—suffices to create a genuine issue of material fact on this issue.

## IV. Defendant's Motion for Summary Judgment on Plaintiff's Tort Claims is Granted

### A. Negligence

■ In its second cause of action, Medical Research argues that Medcon had a duty to use proper care and control in ensuring that it forwarded claims to insurance providers in a timely manner; that Medcon knew or should have known that its failure to process claims in timely manner would render it impossible to collect payment; and that Medcon's negligence entitles it to compensatory damages. [Cmplt. ¶¶ 31–34]. Though Medical Research seems to refer to this in its motion papers as a "fraud" claim, Medcon correctly characterizes it as a claim for negligent performance of contract. Because New York does not recognize any such cause of action, plaintiff's second cause of action must be dismissed. *See Tevdorachvili v. Chase Manhattan Bank,* 103 F.Supp.2d 632, 644 (E.D.N.Y.2000) (citing *Megaris Furs, Inc. v. Gimbel Bros., Inc.,* 172 A.D.2d 209, 211, 568 N.Y.S.2d 581, 583 (1st Dep't 1991)).

### B. Breach of Fiduciary Duty

■ In its third cause of action, plaintiff alleges that Medcon acted as Medical Research's agent and breached its fiduciary duty by failing to process claims in a timely fashion and ensure that plaintiff received payment; to record and report claims for payment; to give proper notice of its intention to terminate the agreement; and to assist in the transition of services to be handled by a new medical billing company (Creative Physician Management). [Cmplt. ¶ 37]. These are the

same allegations upon which plaintiff bases its breach of contract claim. "Since the plaintiff is not alleging tort liability or a breach of a duty distinct from, or in addition to, the breach of contract claim, th[is] cause[ ] of action should be dismissed." *Layden v. Boccio,* 253 A.D.2d 540, 541, 686 N.Y.S.2d 763, 764 (2d Dep't 1998); *see also Remee Products Corp. v. Sho–Me Power Elec. Co-op,* 2002 WL 31323827, at *9 (S.D.N.Y. Oct. 17, 2002) (granting summary judgment on plaintiff's breach of fiduciary duty claim because plaintiff did not allege tort liability distinct from or in addition to breach of contract claim).

### C. Tortious Interference with Contract

 Medical Research's fourth cause of action is one for tortious interference with contract. Plaintiff argues that Medcon's actions tortiously interfered with its contractual relationship with Creative Physician Management. Plaintiff seems to argue that Medcon's failure to timely transfer documents to Creative Physician Management in an organized fashion constitutes tortious interference. The 1999 Agreement contains specific provisions dealing with the transfer of documents to Creative Physician Management. Thus, Medical Research once again bases its tort claim on the same allegations that it argues constitutes breach of contract. "It is a well established principal that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 516 N.E.2d 190, 194 (1987). Here, as in *Clark–Fitzpatrick,* plaintiff's allegations "is merely a restatement, albeit in slightly different language, of the . . . contractual obligations asserted in the cause of action for breach of contract." *Id.* As a result, plaintiff's tortious interference with con-

tract claim is dismissed for the same reasons that I dismissed its breach of fiduciary duty claim.

### CONCLUSION

Plaintiff and defendant's motion for summary judgment on plaintiff's first cause of action for breach of contract are both denied. Defendant's motion for summary judgment on plaintiff's second, third, and fourth causes of action is granted.

This is the decision and order of the Court.