RLI INSURANCE COMPANY and
Alea North American Company,
etc., Plaintiffs,

v.

KING SHA GROUP, et al., Defendants.

No. 05 Civ. 9961 (LAK).

United States District Court,
S.D. New York.

Feb. 10, 2009.

---

**65.** 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

David Eric Ross, Michael B. Golden, Robinson & Cole LLP, New York, NY, for Plaintiffs.

Russell M. Wolfson, Georgoulis and Associates, New York, NY, for Defendants.

## ORDER

LEWIS A. KAPLAN, District Judge.

There have been no objections to the report and recommendation of Magistrate Judge Frank Maas, dated January 16, 2009. S.T.A. is entitled to judgment on its cross-claim against Golden Vale as recited therein.

As this disposes of the final open matter in this case, the Clerk shall enter final judgment, which shall include the award in favor of STA and against Golden Vale as set forth in the report and recommendation, and close the case.

SO ORDERED.

### *REPORT AND RECOMMENDATION TO THE HONORABLE LEWIS A. KAPLAN*

FRANK MAAS, United States Magistrate Judge.

#### I. *Introduction*

In 2005, construction work at the site of a parking garage on East 76th Street in Manhattan caused damage to a neighboring apartment building. After honoring the building's insurance claim, the carrier commenced this action against the owner of the garage, defendant S.T.A. Parking Corporation ("S.T.A."), and the entities that performed work at the site pursuant to contracts or subcontracts. Following extensive negotiations, all but one of the claims have been resolved. The only issue remaining concerns S.T.A.'s cross-claim against co-defendant Golden Vale Construction Corporation ("Golden Vale") al-

leging negligence in the performance of Golden Vale's subcontract work.

After Golden Vale filed an answer to the cross-claim, its counsel sought to withdraw based on Golden Vale's lack of cooperation and nonpayment of fees. (*See* Docket Nos. 29, 36). That motion was granted on June 2, 2006, (Docket No. 51), but Golden Vale did not retain new counsel and has failed to participate further in this litigation. Accordingly, S.T.A. filed a motion for a default judgment against Golden Vale, which Your Honor granted on March 1, 2007. (*See* Docket Nos. 83–84, 90).

The remaining parties subsequently agreed to proceed before me pursuant to 28 U.S.C. § 636(c), but Golden Vale, which had already defaulted, did not sign the consent form. (Docket No. 115). For this reason, my determinations with respect to Golden Vale's liability to S.T.A. take the form of a Report and Recommendation.

S.T.A.'s cross-claims against Golden Vale for contribution and indemnification were dismissed pursuant to a Stipulation of Partial Settlement dated July 23, 2007. (Docket No. 107). Accordingly, the only claim before the Court is S.T.A.'s negligence claim against Golden Vale. By order dated April 29, 2008, I directed S.T.A. to serve and file its inquest papers concerning the damages owed to it by Golden Vale by May 16, 2008, and gave Golden Vale until June 2, 2008, to respond. (Docket No. 122). S.T.A.'s papers were timely filed. (*See* Docket Nos. 128–29). To date, however, Golden Vale has neither retained counsel, nor submitted any papers in opposition to the S.T.A. submission.

For the reasons set forth below, I recommend that S.T.A. be awarded damages in the amount of $904,391.12, consisting of $326,089 in cost overruns and $578,302.12 in lost revenue.

## II. *Standard of Review*

Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages on the claim, *see Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999), and (b) concluded that the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997). Here, because Golden Vale has defaulted, S.T.A.'s well-pleaded allegations concerning issues other than damages must be accepted as true. *See Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); *Time Warner Cable of N.Y.C. v. Barnes,* 13 F.Supp.2d 543, 547 (S.D.N.Y.1998).

## III. *Facts*

The unrefuted allegations of S.T.A.'s cross-claim, together with its inquest papers, establish as follows:

### A. *Jurisdiction*

The Court had subject matter jurisdiction over the original diversity action pursuant to 28 U.S.C. § 1332. Although S.T.A. and Golden Vale both are corporations organized under the laws of the State of New York, (Answer ¶¶ 13, 125), the Court has ancillary jurisdiction over S.T.A.'s negligence cross-claim pursuant to 28 U.S.C. § 1367. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 375–76, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Cam–Ful Indus., Inc. v. Fidelity & Deposit Co. of Md.,* 922 F.2d 156, 160–61 (2d Cir.1991).

### B. *Basis for S.T.A.'s Claim*

In 2004, S.T.A. sought to expand its garage from 90 to 150 parking spaces by adding a sub-basement below its existing basement. (Aff. of Michael Zacharias, sworn to on May 15, 2008 ("Zacharias Aff."), ¶¶ 7, 31). Accordingly, on October 25, 2004, S.T.A. entered into a construction contract with King Sha, which was to construct the sub-basement. (*Id.* ¶ 7; Ex. F).[1] The contract provided for King Sha to be paid $457,000, plus $675 for each cubic yard required for the underpinning of neighboring structures. (Zacharias Aff. ¶¶ 8, 12; Ex. F). Subsequently, the scope of work of the contract changed somewhat, bringing the base contract price to $463,000. (Zacharias Aff. ¶ 12; Ex. H). The contract provided that any subcontractors hired by King Sha were to assume "all the obligations and responsibilities" set forth in the principal contract. (Ex. F § 10.3). The contract did not specify when the project was to be completed, stating instead that King Sha would have a "reasonable period for performing the Work" and that time was "of the essence." (*Id.* § 13.1; Zacharias Aff. ¶ 9). Finally, the contract stated that New York law would govern the terms of the contract. (Ex. F § 18.2).

On October 27, 2004, King Sha hired Golden Vale to perform the excavation and underpinning required in connection with the sub-basement project. (Zacharias Aff. ¶ 10; Ex. G). Shortly after Golden Vale began that work, it became apparent that the soil beneath the foundation of the neighboring apartment building at 430 East 77th Street was loosening, causing the building to sink. (*See* Ex. J at 2). As construction progressed, so did the dam-

age, until the New York City Department of Buildings ("DOB") issued a stop work order on March 14, 2005. (Zacharias Aff. ¶ 14). Eventually, the DOB required that S.T.A. remove Golden Vale's defective underpinning and replace it before resuming its work on the sub-basement. (*Id.* ¶ 16). By then, S.T.A. had paid $370,500 to King Sha and Golden Vale. (*Id.* ¶ 17; Ex. K).

Neither King Sha nor Golden Vale ever returned to the project. (Zacharias Aff. ¶ 17). As a consequence, on October 27, 2005, S.T.A. hired Coffey Contracting, Inc. ("Coffey"), to remove and replace the defective underpinning at a cost of $90,039. (*Id.* ¶ 19; Ex. L). S.T.A. subsequently contracted with Coffey to complete the original subbasement project for $298,750. (Zacharias Aff. ¶ 22; Ex. M). Unlike King Sha's contract, Coffey's contract did not include the cost of steel fabrication and installation. (Zacharias Aff. ¶ 23). S.T.A. therefore entered into a separate contract with MNS Construction and Renovation to complete that work for $85,000. (*Id.*; Ex. N). The DOB also required S.T.A. to retain the services of a consultant to monitor any movement of the neighboring buildings, which cost $13,330.[2] (Zacharias Aff. ¶ 21; Ex. K).

S.T.A. alleges that it eventually spent $857,589 to complete the sub-basement. (Zacharias Aff. ¶ 26). According to its construction expert, but for Golden Vale's negligence, the project would have cost S.T.A. only $531,500 to complete. (*Id.* ¶ 27; Aff. of James R. Beach, P.E., sworn to on May 14, 2008 ("Beach Aff."), ¶ 4). S.T.A. contends that it consequently incurred $326,089 in cost overruns as a result of Golden Vale's negligence. (Za-

---

1. "Ex." refers to the exhibits annexed to the Zacharias Affidavit.

2. Paragraph 21 of the Zacharias Affidavit indicates that this "Vibranalysis" work cost $13,615, but paragraph 26 states that it cost $13,300. The latter figure is consistent with the cancelled checks and payment details outlined in Exhibit K.

charias Aff. ¶ 28). S.T.A.'s construction expert further opines that the original contract work could have been completed within six months. (Beach Aff. ¶ 5). Due to Golden Vale's negligent underpinning, however, the project took twenty-eight months. (*Id.*). During the twenty-two months of delay, S.T.A. claims to have lost revenue in the amount of $52,572.92 per month, or a total of $1,156,604. (Zacharias Aff. ¶ 30–32; Ex. P).

## IV. *Discussion*

S.T.A.'s cross-claim against Golden Vale seeks to recover the damages resulting from Golden Vale's negligence in performing the underpinning work. (Answer ¶¶ 124–29). To state a claim for negligence under New York law, S.T.A. must allege that: (a) Golden Vale owed it a duty; (b) Golden Vale breached its duty; and (c) the breach was the proximate cause of S.T.A.'s injuries. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)); *Texas Liquids Holdings, LLC v. Key Bank Nat'l Ass'n*, No. 05 Civ. 5070(KMW), 2007 WL 950136, at *3 (S.D.N.Y. Mar. 27, 2007). Here, S.T.A.'s cross-claim alleges that Golden Vale owed S.T.A. a duty to use "ordinary and reasonable care" in performing work on the sub-basement, and that Golden Vale breached this duty by negligently underpinning the adjoining property. (Answer ¶¶ 127–28). Additionally, S.T.A. alleges that Golden Vale's negligence was the direct and proximate cause of its damages. (*Id.* ¶ 129). These allegations make out a negligence claim.

As set forth below, however, because S.T.A. was in privity of contract with Golden Vale, an independent legal duty separate from the contract must exist in order for S.T.A. to recover on its negligence claim. Such a duty exists on the facts of this case.

## A. *Privity of Contract*

In New York, there ordinarily is no contractual privity between owners and subcontractors. *See Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 875 F.Supp. 165, 174–75 (S.D.N.Y.1994); *N. Moore St. Developers, LLC v. Meltzer/Mandl Architects, P.C.*, 23 A.D.3d 27, 799 N.Y.S.2d 485, 489 (1st Dep't 2005); *Mariacher Contracting Co., Inc. v. Kirst Constr., Inc.*, 187 A.D.2d 986, 590 N.Y.S.2d 613, 614 (4th Dep't 1992). When an owner and subcontractor engage in direct dealings, however, the "functional equivalent of privity" may be established despite the lack of a formal contract. *See City Sch. Dist. of City of Newburgh v. Hugh Stubbins & Assocs., Inc.*, 85 N.Y.2d 535, 538–39, 626 N.Y.S.2d 741, 650 N.E.2d 399 (1995).

Here, several factors establish that S.T.A. and Golden Vale were in privity. First, the prime contract provided that the subcontractors would assume "all the obligations and responsibilities" that King Sha had assumed with respect to S.T.A. and bound them to "the terms of the Contract Documents." (Ex. F § 10.3). Under New York law, this alone is sufficient to establish privity. *See Brownell Steel, Inc. v. Great Am. Ins. Co.*, 28 A.D.3d 842, 813 N.Y.S.2d 550, 551 (3d Dep't 2006) (finding privity where subcontract incorporated terms and assumed responsibilities of prime contract and clearly was intended for original contracting party's benefit). Furthermore, S.T.A. paid $150,000 to Golden Vale directly, rather than through King Sha, its general contractor. (Zacharias Aff. ¶ 17 & n. 1). At Golden Vale's request, seven of these payments (totaling $105,000) were made in cash. (*Id.* ¶ 18; Ex. K). To confirm that the cash payments had been made, S.T.A. also required

Golden Vale's project manager, Joseph Doolan, to initial its records. (*See* Zacharias Aff. ¶ 18; Ex. K). There consequently is no question that S.T.A. and Golden Vale had direct dealings, and that Golden Vale knew that the underpinning was being done for S.T.A.'s benefit. This is sufficient to establish a relationship of contractual privity. *See Hugh Stubbins & Assocs., Inc.,* 85 N.Y.2d at 538–39, 626 N.Y.S.2d 741, 650 N.E.2d 399 (plaintiff who exerted significant control over a construction project had a relationship which was the functional equivalent to privity); *Rotterdam Square v. Sear–Brown Assocs. P.C.,* 246 A.D.2d 871, 668 N.Y.S.2d 278, 279 (3d Dep't 1998) (finding privity where subcontractor knew that work was for benefit of the owner); *U.S. E. Telecomms., Inc. v. U.S. W. Info. Sys., Inc.,* No. 87 Civ. 2924(KTD)(THK), 1993 WL 385810, at *21 (S.D.N.Y. Sept. 30, 1993) (evidence that owner assumed payment obligations toward subcontractor may demonstrate privity); *see also Bubonia Holding Corp. v. Jeckel,* 189 A.D.2d 957, 958, 592 N.Y.S.2d 499 (3d Dep't 1993) (no contractual privity between owner and subcontractor where subcontractor was paid by and dealt exclusively with contractor, not owner); *R.H. Sanbar Projects, Inc. v. Gruzen P'ship,* 148 A.D.2d 316, 538 N.Y.S.2d 532, 535 (1st Dep't 1989) (although subcontractors ordinarily lack privity to assert claims against owners, an owner, as "foreseeable and intended beneficiary" of general contractor-subcontractor agreement, may proceed against subcontractor).

### B. *Negligence Claim*

■ New York law does not recognize a cause of action for the negligent performance of a contract. *See Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.,* 253 F.Supp.2d 643, 649 (S.D.N.Y.2003); *Chase Manhattan Bank, N.A. v. Remington Prods., Inc.,* 865 F.Supp. 194, 200 (S.D.N.Y.1994). To prevail on its negligence claim S.T.A. therefore must demonstrate that Golden Vale "breached a duty distinct from, or in addition to, the breach of contract." *Am. Tel. & Tel. Co. v. N.Y.C. Human Res. Admin.,* 833 F.Supp. 962, 984 (S.D.N.Y.1993); accord *Dorking Genetics v. U.S.,* 76 F.3d 1261, 1269–70 (2d Cir. 1996) (plaintiff can maintain negligence action for a service contract provided he can demonstrate violation of a legal duty independent of the contract); *Inter Impex S.A.E. v. Comtrade Corp.,* No. 00 Civ. 0133(GBD), 2004 WL 2793213, at *6 (S.D.N.Y. Dec. 6, 2004) ("even if ... cross-claimant were able to allege that a contract existed ... for the provision of services," it must also show that a legal duty independent from the contract was breached).

■ To give rise to a tort claim, the independent duty "must spring from circumstances extraneous to, and not constituting elements of, the contract." *Ross v. FSG PrivatAir, Inc.,* No. 03 Civ. 7292(NRB), 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 17, 2004) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)); *see also TVT Records v. Island Def Jam Music Group,* 412 F.3d 82, 91 (2d Cir.2005) (fraudulent concealment claim "insufficiently distinct from breach of contract claim to be viable"); *Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Ed.,* 944 F.Supp. 1169, 1180 (S.D.N.Y.1996) (where defendant is a fiduciary or professional a legal duty separate from the parties' contractual relationship may result). "[M]erely charging a breach of a 'duty of due care,' employing familiar language of tort law, does not, without more, transform a simple breach of contract into a tort claim." *Clark–Fitzpatrick, Inc.,* 70 N.Y.2d at 390, 521 N.Y.S.2d 653, 516 N.E.2d 190.

■ Here, the New York City Administrative Code ("Code") creates an independent legal duty to perform construction work in accordance with Code specifications. Specifically, the Code provides that, "whenever the safety of any adjoining building is or may be affected by an excavation, it shall be the duty of the person causing such excavation to be made to provide safe support for such building . . . ." Code § 26–229.

In its cross-claim, S.T.A. asserts that Golden Vale had a duty "to perform construction at the Project with ordinary and reasonable care." (Answer ¶ 127). Notwithstanding this generalized tort language, it is clear that this duty in fact stemmed from Golden Vale's statutory obligations under the Code. This suffices to make out a negligence claim under New York law. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.*, No. 02 Civ. 0504(RCC), 2005 WL 550940, at \*3 (S.D.N.Y. Mar. 9, 2005) (independent duty to comply with the New York State Uniform Fire Prevention and Building Code gives rise to negligence claim).

### C. *Damages*

Pursuant to its negligence claim, S.T.A. seeks to recover from Golden Vale damages consisting of cost overruns, lost revenue, and prejudgment interest. S.T.A. also argues that any award should not be offset by the payments it already has received from King Sha because Golden Vale is in default.

#### 1. *Cost Overruns*

■ S.T.A. contends that it is entitled to $326,089 in cost overruns, based on the difference between the King Sha contract price and the amount ultimately paid by S.T.A. to complete the work. (*See* Inquest Mem. 3–4; Zacharias Aff. ¶ 28). It is clear

from S.T.A.'s contract documents and the affidavit of its expert that the original contract would have cost $531,500 to complete. (*See* Exs. F, H; Beach Aff. ¶ 4). S.T.A., however, will ultimately pay $857,-589 [3] to complete the project. (*See* Ex. K). Accordingly, the difference of $326,089 should be awarded to S.T.A.

#### 2. *Lost Revenue*

■ S.T.A. also seeks to recover $1,156,604 in lost revenue, a figure it computes based on twenty-two months of decreased parking receipts in the amount of $52,572.92 per month. (Inquest Mem. 5; Zacharias Aff. ¶ 30, 37). Although twenty-two months appears to be a reasonable estimate of the length of time the project was delayed as a result of Golden Vale's negligence, (*see* Beach Aff. ¶ 5; Ex. V), the alleged amount of the losses incurred is excessive.

S.T.A. states that it had ninety usable parking spaces before construction began, but at most only forty-five usable parking spots while the construction was underway. (*See* Zacharias Aff. ¶¶ 31–32; Ex. O). Because the completed construction increased the number of parking spots to 150, S.T.A. contends that it was deprived of the use of 105 parking spots throughout the period that the project was delayed. (Zacharias Aff. ¶ 32). To arrive at its monthly lost revenue figure, S.T.A. computed a per parking spot rate for monthly renters ($385) and daily users ($115.69) and multiplied these figures by 105. (*Id.* ¶¶ 36–37). S.T.A. contends that it is entitled to recover the monthly rental income for the 105 spots ($40,425/month) and the daily parker income for those same spots ($12,147.92/month); *i.e.*, monthly lost revenue in the amount of $52,572.92. (*Id.* ¶ 37).

**3.** This figure includes $19,789 that S.T.A. still owes Coffey. (*See* Ex. K at n. 4).

The Department of Consumer Affairs issued S.T.A. a garage license for ninety parking spots on May 24, 2005, after the work on the project had stopped on March 14, 2005. (See Ex. O). It therefore is unclear whether S.T.A. would, in fact, have had authorization to operate a 150–car garage at the end of the six-month construction period that S.T.A. anticipated. In any event, even if 105 new parking spots would have been available for use by then, S.T.A.'s calculations assume that each parking spot would have both a daily and a monthly user. Although S.T.A. contends that it "often receives two rents for the same spot" because monthly rental clients take their vehicles out of the garage during the day, (Zacharias Aff. ¶ 39), it is highly unlikely that every spot would have been used by both types of customers on each and every day of the twenty-two month delay period. Moreover, S.T.A. has provided no information regarding the actual utilization of the spots that it did have available during this period. (*Id.* ¶ 35). This omission makes S.T.A.'s calculations highly suspect.

In these circumstances, I recommend that the monthly lost revenue figure be reduced by one-half. Thus, the monthly lost revenues would be $26,286.46, resulting in a total lost revenue award of $578,302.12.

### 3. *Prejudgment Interest*

■ S.T.A. also seeks to recover prejudgment interest. (Inquest Mem. 5–6). The Federal Rules provide, however, that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed.R.Civ.P. 54(c). Citing that language, the Second Circuit has held that a demand for prejudgment interest is not implied by a "generic request for 'such other and further relief which this Court deems just and proper.'" *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir.2007). Rather, Rule 54(c) re-quires "meaningful notice" beyond such formulaic language so that defendants can anticipate "their exposure in the event of default." *Id.*

In its complaint, S.T.A. did not expressly seek prejudgment interest. Instead, S.T.A. simply sought judgment on its fifth cross-claim against Golden Vale in "an amount not finally determined, but believed to be in excess of $1,000,000." (Compl. ¶ 129, Demand). S.T.A. also requested that it be granted its "costs, disbursements and attorneys' fees incurred herein" and "such other and further relief as this Court deems just and proper given the circumstances." (Compl. Demand).

Since S.T.A. did not specifically demand prejudgment interest in its complaint, the Court cannot award it based solely on its boilerplate request for "other and further relief." Accordingly, S.T.A.'s request for prejudgment interest must be denied.

### 4. *Offset*

■ S.T.A. has received certain sums as part of its settlement with King Sha. (*See* letter from Russell Wolfson to the Court, dated April 23, 2008). In its papers, S.T.A. asserts that this money should not be credited against the amount it seeks from Golden Vale because Golden Vale is in default. (*See* Inquest Mem. 6).

■ In general, New York law protects non-settling tortfeasors from paying more than their equitable share. *See* N.Y. Gen. Oblig. Law § 15–108(a). To receive such protection, a tortfeasor must plead it as an affirmative defense; otherwise it is forfeited. *See Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir.2008) ("[T]he Legislature did not make § 15–108 apportionment an absolute right—it made it an affirmative defense, and affirmative defenses are subject to forfeiture if not raised in a timely fashion.") (internal citations omitted); *Bigelow v. Acands, Inc.*, 196 A.D.2d

436, 601 N.Y.S.2d 478, 480 (1st Dep't 1993) ("[Nonsettling defendant] bore the burden of establishing the equitable shares attributable to the settling defendants for purposes of reducing the amount of [its] own responsibility for the damages.").

■ Where, as here, a non-settling defendant has defaulted, and the remaining parties have settled their disputes, each party's equitable share of the fault obviously has not been determined by a finder of fact. *See Godfrey v. Soto*, No. 06 Civ. 428(NG)(JO), 2007 WL 2693652, at *7 (E.D.N.Y. Sept. 10, 2007). Thus any potential setoff could only be based on the settlement amount, rather than a percentage of fault. *Id.* (citing *Whalen v. Kawasaki*, 92 N.Y.2d 288, 292, 680 N.Y.S.2d 435, 703 N.E.2d 246 (1998)). The non-settling defendant bears the burden, however, of establishing the extent to which a recovery against it would be duplicative of the plaintiff's recovery from the settling defendants. *Id.*

"The few New York courts confronted with a non-settling defendant who has defaulted have decided that the windfall should not accrue to the benefit of the party who has refused to participate in litigation." *Id.*; *see also Sniadach v. Gonzales*, 191 Misc.2d 422, 425, 743 N.Y.S.2d 221 (N.Y. Civil Court 2001) (due to nonsettling defendants' default, settlement not counted against plaintiff's recovery; plaintiff can recover twice). In this lawsuit, Golden Vale's equitable share of fault similarly has not been determined, nor has it made any showing why a setoff should be granted. Accordingly, Golden Vale is not entitled to any reduction in the amount of the judgment on the basis of King Sha's settlement.

## V. *Conclusion*

Although the relationship between S.T.A. and Golden Vale was based on a contract, the Code gives rise to an independent legal duty which allows S.T.A. to recover on its negligence claim. Furthermore, S.T.A. has demonstrated a breach of that duty by Golden Vale. For the reasons set forth above, I therefore recommend that S.T.A. be awarded a total of $904,391.12, consisting of $326,089 in cost overruns and $578,302.12 in lost revenue.

## VI. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Lewis A. Kaplan and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Kaplan. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992).