LAMBERT HOUSES REDEVELOPMENT COMPANY, Respondent, v HRH EQUITY CORPORATION, Sued Herein as HRH CONSTRUCTION CORPORATION, Appellant, and GLEN-GERY CORPORATION, Respondent, et al., Defendant.

HRH EQUITY CORPORATION, Third-Party Plaintiff-Appellant, v M.W.R. CONSTRUCTION CORPORATION and MARTIN ROSEN, Third-Party Defendants, and WOLKOW-BRAKER ROOFING CORP. et al., Third-Party Defendants-Respondents. (And Fourth- and Fifth-Party Actions.)

First Department, May 20, 1986

## APPEARANCES OF COUNSEL

*Harry P. Sacks* of counsel *(Frederick R. Rohn* with him on the brief; *Sacks, Montgomery, Pastore & Levine, P. C.,* attorneys), for appellant and third-party plaintiff-appellant.

*Wayne C. Matus* of counsel *(Bradley Prozeller* with him on the brief; *Christy & Viener,* attorneys), for respondent.

*Julius L. Schapira* of counsel *(Morris Dershowitz* with him on the brief; *Max E. Greenberg, Cantor & Reiss,* attorneys), for Prince Carpentry, Inc., third-party defendant-respondent.

*Michael Salgo* of counsel *(William Rothberg* and *Katherine Levin* with him on the brief; *Popkin & Rothberg,* attorneys), for Wolkow-Braker Roofing Corp., third-party defendant and fifth-party plaintiff-respondent.

*Melvin D. Kraft* of counsel *(Frank J. Giliberti* with him on the brief; *Burns Summit Rovins & Feldesman,* attorneys), for Glen-Gery Corporation, defendant-respondent.

## OPINION OF THE COURT

Asch, J.

Plaintiff Lambert Houses Redevelopment Company (Lambert) owns three Federally assisted low and moderate income housing projects located in the Bronx Park South Urban Renewal Area. The projects were constructed in the early 1970's. The general contractor, defendant HRH Equity Corporation (HRH), subcontracted work to third-party defendants M.W.R. Construction Corporation, Wolkow-Braker Roofing Corp. and Prince Carpentry, Inc.

In 1977, following completion of the construction, Lambert commenced the instant action against HRH alleging breach of contract, negligence and breach of warranty pertaining to the mortar, masonry, roofing, insulation, waterproofing and stud walls.

HRH answered the complaint denying liability and commenced a third-party action against the subcontractors. The subcontractors impleaded (1) Glen-Gery Corporation, the masonry manufacturer; (2) Davis, Brody & Associates, the architect; and (3) GAF Corporation, the roofing material supplier.

In 1978, Lambert commenced a second action against M.W.R. and Glen-Gery regarding the construction. The two actions were subsequently consolidated.

The parties have since engaged in discovery proceedings which are not yet concluded.

On June 17, 1985, Lambert and HRH entered into a written agreement governing resolution of the claims made against HRH pertaining to work actually performed by the subcontractors. Lambert agreed that the claims alleged in the actions constitute all of its claims against HRH. The contractor admitted liability to Lambert for the claims asserted in the complaint and HRH's liability was fixed and liquidated in such amounts as may be recovered against the third-party

defendants. In addition, HRH agreed to pay $375,000 to help defray the expenses of prosecuting the action.

HRH also agreed that it would move for permission to amend its answer and cross complaints so as to reflect the acknowledgment of liability for Lambert's claims and to assert claims against the various defendants. The agreement was to become effective upon the issuance of the order granting the amendment. Pursuant to the agreement, HRH moved to interpose a second amended answer and an amended third-party complaint. The proposed answer admitted the allegations asserted in Lambert's complaint and asserted the liquidated damages provision of the agreement as an affirmative defense.

The third-party complaint served by HRH in 1977 set forth the following allegations: As against M.W.R., Martin Rosen, Wolkow-Braker and Prince Carpentry, Inc., the contractor contended that it had no part in the actual performance of the alleged defective construction and no knowledge that M.W.R.'s work was not in accordance with the construction contracts. Alleging that the subcontractors breached their respective contracts in that they failed to perform in a skillful manner and in conformity with the construction contracts, HRH sought indemnification.

The proposed amended third-party complaint specifies that HRH admitted liability to Lambert and, under the terms of the subcontracts, the subcontractors are responsible to HRH for the damages that have been and will be sustained as a result of said defects in the subcontractors' work.

Special Term denied HRH's motion finding that the amended pleadings would prejudice the subcontractors at trial, citing *Meleo v Rochester Gas & Elec. Corp.* (72 AD2d 83). The court further held that the agreement between HRH and Lambert appeared to be an attempt to circumvent General Obligations Law § 15-108 (a) and would deprive the other defendants of their statutory right of setoff.

■ ■ We disagree with the conclusions reached by Special Term and reverse to grant HRH's motion to amend its pleadings.

The agreement herein is a standard form of liquidating agreement providing that all recovery will, in effect, pass through the general contractor to the injured party, thereby leaving the subcontractor and the owner to pursue their claims against each other.

Agreements liquidating the general contractor's liability in

such amounts as can be recovered against the party who allegedly caused the injury have been uniformly upheld. *(See, e.g., Ardsley Constr. Co. v Port of N. Y. Auth.,* 61 AD2d 953; *Degnon Contr. Co. v City of New York,* 235 NY 481, 487; *Whitmyer Bros. v State of New York,* 63 AD2d 103, 105, *affd* 47 NY2d 960.)

In *Ardsley Constr. Co. (supra,* p 954), an agreement between a general contractor and a subcontractor was upheld whereby the general contractor's liability to a subcontractor was liquidated in the amount of "any monies that may be recovered from" the owner on account of the subcontractor's claims. This court rejected the owner's argument that the agreement was ineffective, explaining: "Such agreement between plaintiffs [the general contractor] and the subcontractor with respect to any recovery from defendant [the owner] affects only the relationship between plaintiffs and the subcontractor and should not be available to defendant as a shield against liability for breach of contract." (61 AD2d, at p 954.) The court noted that suits based upon such agreements are routinely entertained in the Federal courts and concluded that they were permissible under New York law, as well.

The agreement between HRH and Lambert is identical in substance. It provides that HRH's liability to Lambert is liquidated in the amount of any recovery from the other parties and that recovery by HRH on its claims against the other parties will be passed through to Lambert. In both cases the general contractor has liquidated its liability to the claiming party in such amounts as can be recovered from the other party. In both cases the liquidating agreement bridges the gap in privity between subcontractor and owner, allowing the general contractor to withdraw as an active participant.

There is no necessity for a liquidating agreement to include a release of the general contractor. There was no release in the agreement upheld in *Ardsley (supra),* nor do any of the other cited cases upholding liquidating agreements mention releases.

In fact, a release would be completely inconsistent with the aim and purpose of a liquidating agreement, which is not to release liability but rather to liquidate liability in whatever amounts can be recovered against the other parties. A release of the general contractor HRH would prevent the continued assertion of such claims between plaintiff Lambert and the subcontractors. The absence of such release is not an attempt

to circumvent General Obligations Law § 15-108 (a). In the absence of such agreement, HRH cannot recover from the subcontractors because the damage has been suffered by the owner, and the owner cannot recover from the subcontractors for breach of contract because it lacks privity of contract with the subcontractors. The agreement here, just as the liquidating agreement upheld in *Ardsley (supra),* permits the claim at issue to be litigated between owner and subcontractor.

The general purpose of General Obligations Law § 15-108 is to encourage settlements. *(Rock v Reed-Prentice Div. of Package Mach. Co.,* 39 NY2d 34, 40-41.)

Section 15-108 provides:

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."

This section does not apply in the situation before us since the agreement expressly provides that Lambert's claims against HRH "are not released or discharged and shall survive this Agreement and remain in full force and effect, except that [HRH's] liability for [such claims] shall be fixed and liquidated as provided herein".

■ The inapplicability of General Obligations Law § 15-108 (a) is not prejudicial to the other defendants.

The right of setoff called for in section 15-108 (a) is intended to avoid a result in which the nonsettling tort-feasors bear

more than their equitable share of the plaintiff's damages. This right of setoff is necessitated by section 15-108 (b), which provides that a release given to one tort-feasor will relieve him from liability for contribution to any other tort-feasor. In view of this release under subdivision (b) of section 15-108 from any liability for contribution, the nonsettling tort-feasors are necessarily given a right of setoff under section 15-108 (a) in order to limit their liability to their equitable share of the plaintiff's damages.

Here, the absence of a release of HRH not only renders section 15-108 (a) inapplicable, but it also deprives HRH of any protection under section 15-108 (b) against claims by the other parties for contribution. Since the rights of the subcontractors to claim contribution from HRH will continue after the proposed amendments are permitted, and will not be cut off under section 15-108 (b), there is no need to accord the subcontractors a setoff under section 15-108 (a).

The agreement itself expressly recognizes the continued existence of cross claims against HRH by the other defendants and, therefore, provides for indemnification of HRH by the plaintiff from all such claims. Thus, the other defendants will be free to press their claims for contribution from HRH, and the continued existence of such claims will assure that the nonsettling parties will pay no more than their fair share of the plaintiff's damages.

The other parties will also be free to assert a defense of partial payment in the amount of HRH's payment to Lambert under the agreement, thereby providing the remainder of the protection that the section 15-108 (a) setoff affords. This defense of partial payment is based on common-law principles and may be asserted even though section 15-108 (a) does not apply. *(Mulligan v Wetchler,* 39 AD2d 102, 105-106.)

The effect of the agreement between HRH and Lambert, then, is to leave the other parties in exactly the same position as if section 15-108 of the General Obligations Law applied.

*Meleo v Rochester Gas & Elec. (supra),* cited by Special Term, is inapplicable; the granting of HRH's motion would not here cause the prejudice present in *Meleo.*

In *Meleo (supra)* there was a secret agreement, not disclosed to the jury, between plaintiff and 4 of the 5 defendants. The jury was not informed that the plaintiff had settled with four of the defendants. These settling defendants continued to participate in the trial, secretly cooperating with the plaintiff

to give the jury the impression that the nonsettling defendant was solely responsible for the plaintiff's injury.

Justice Hancock, Jr., properly found that the trial was prejudicial to the nonsettling defendant on the ground that nondisclosure of the settlement prevented the jury from scrutinizing the evidence in light of the true self-interests and interrelationships of the parties. (72 AD2d, at pp 97-98.)

■ Here, in contrast, Lambert and HRH have fully disclosed the existence and terms of the agreement and have annexed copies of it to both of the proposed amended pleadings, thereby assuring that the jury in this case will be fully informed of the agreement and of the relationship between Lambert and HRH.

This full disclosure of the agreement entirely avoids the prejudice found in *Meleo (supra)*. In addition, CPLR 4533-b will not preclude introduction of the agreement into evidence. That section protects a plaintiff from a defendant's introduction of a settlement agreement into evidence and has no application in the situation before us, where the plaintiff Lambert and third-party plaintiff HRH both voluntarily disclose the agreement.

The third-party defendants assert that HRH's "change of sides" in this litigation, and their cooperation with plaintiff, will prejudice them. This, however, is not a ground for denying HRH leave to amend its pleadings. There is no rule against a defendant settling and agreeing to cooperate with the plaintiff. To the extent that such a settlement "prejudices" another defendant, it is not the kind of prejudice that would justify a denial of leave to amend pleadings.

Accordingly, the order of the Supreme Court, New York County (Hortense W. Gabel, J.), entered October 7, 1985, denying the motion of defendant HRH Equity Corporation sued herein as HRH Construction Corporation for an order granting it leave to amend its answer and third-party complaint, should be reversed, on the law and facts and in the exercise of discretion, and the motion granted, with costs and disbursements.

SANDLER, J. P., KASSAL, ROSENBERGER and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on October 7, 1985, unanimously reversed, on the law and facts and in the exercise of discretion, and the motion seeking leave to amend its answer and third-party complaint granted. Appel-

lant shall recover of respondents submitting briefs one bill of $50 costs and disbursements of this appeal.