[669 NYS2d 741]

BARRY, BETTE & LED DUKE, INC., Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 74178.)

Third Department, March 12, 1998

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Patrick Barnett-Mulligan, Peter G. Crary* and *Gina M. Ciccone* of counsel), for appellant.

*Murphy, Burns, Barber & Murphy, L. L. P.,* Albany *(William J. Murphy* of counsel), for C.T. Brickman & Associates.

## OPINION OF THE COURT

MERCURE, J.

Claimant was the prime general contractor on a project for construction of a headquarters complex for the State Division of Military and Naval Affairs at the Albany County Airport. C.T. Brickman & Associates (hereinafter Brickman) subcontracted with claimant to install partitions and suspended acoustical ceilings in the complex. In December 1986, claimant filed a claim against the State for damages resulting from an alleged five-month delay in completing the project based upon, among other things, a May 2, 1985 stopwork order that the State had issued with regard to partition work in the headquarters building. Subsequently, in May 1988, claimant filed an amended claim asserting a second cause of action on behalf of Brickman (the only cause of action at issue on this appeal), seeking to recover the cost of additional work Brickman was required to perform in connection with its installation of acoustical ceilings in the area affected by the stopwork order.

At trial, the parties stipulated that it cost Brickman $25,532.41 to perform extra work necessitated by another subcontractor's installation of fireproofing material during the time period covered by the stopwork order and prior to Brickman's installation of the ceilings. At the conclusion of the evidence, the State moved to dismiss the second cause of action based upon the lack of privity of contract between Brickman and the State. The Court of Claims denied the motion and, on the merits, found that the State was liable for the extra work performed by Brickman. The State appeals from the judgment awarding damages in the stipulated sum. At issue is the propriety of the Court of Claims' finding of an implied liquidating agreement between claimant and Brickman under the terms of which claimant was to prosecute Brickman's claim against the State and pay over to Brickman any award received in satisfaction of that claim. Because we conclude that the Court of Claims erred in that finding, we are constrained to reverse its judgment and dismiss claimant's second cause of action.

It is established law that the general contractor on a construction project which has itself sustained no injury may not bring suit on behalf of a subcontractor for additional costs caused by the owner's delays (*see, Degnon Contr. Co. v City of New York*, 235 NY 481, 486-487). In addition, lacking privity of contract, the subcontractor is also precluded from bringing suit against the owner (*Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276, 282). The frequently employed remedy is a "liquidating agreement" between the general contractor and the subcontractor, which in its general form (1) imposes liability upon the general contractor for the subcontractor's increased costs, thereby providing the general contractor with a basis for legal action against the owner, (2) liquidates that liability in the amount of the general contractor's recovery against the owner, and (3) provides for a pass-through of that recovery to the subcontractor (*see, Degnon Contr. Co. v City of New York, supra*, at 487; *Schiavone Constr. Co. v Triborough Bridge & Tunnel Auth.*, 209 AD2d 598, 599; *Lambert Houses Redevelopment Co. v HRH Equity Corp.*, 117 AD2d 227, 230-231; *Ardsley Constr. Co. v Port of N. Y. Auth.*, 61 AD2d 953).

As correctly observed by the Court of Claims, liquidating agreements, which are generally enforceable, need not take any particular form. They may be memorialized in the subcontract or in a separate written agreement and may be assembled from several documents executed over a period of years. Nonetheless, and this is where we diverge from the view expressed by the Court of Claims, there will be no liability in the general contractor absent an actual contractual commitment to that effect (*see, Triangle Sheet Metal Works v Merritt & Co.*, 79 NY2d 801, 802; *Phoenix Elec. Contr. v Lehr Constr. Corp.*, 219 AD2d 467, *lv denied* 87 NY2d 805).

At trial, neither claimant nor Brickman alleged the existence of any such agreement. Recognizing that fact, the Court of Claims nonetheless inferred a liquidating agreement between those parties by virtue of the fact that Brickman brought no action against claimant ("its failure to sue the only party with whom it is in privity is inexplicable unless it is acting in reliance on an understanding with [claimant] that its claim is going to be prosecuted by that party") and that claimant pursued Brickman's claim against the State ("there is no reason for [claimant] to consistently assert its subcontractor's cause of action unless it, too, is carrying out the terms of an agreement with that party, an agreement from which it benefitted by not being made the defendant in a lawsuit"). We believe that the Court of Claims' analysis in that regard is flawed.

First, Brickman's failure to assert a claim against claimant could well be explained by the absence of a liquidating agreement imposing any liability on claimant. Second, liquidating agreements do not come into existence through inference. To the contrary, "[i]f a subcontractor wants a prime contractor to be a guarantor of job performance, it should bargain for the inclusion in its subcontract of a provision to that effect" (*Triangle Sheet Metal Works v Merritt & Co.*, *supra*, at 803). Indeed, if a liquidating agreement could be implied any time a general contractor asserts a claim on behalf of a subcontractor, an "implied" liquidating agreement could be found in every case, including *Degnon*. Absent a showing of actual contractual liability in claimant, there can be no liquidating agreement, and we conclude that claimant's mere agreement to prosecute Brickman's claim against the State and pay over any sums recovered would amount to nothing more than an assignment of Brickman's contract rights, which would subject claimant, as assignee, to the State's defense of lack of privity (*see*, 6A NY Jur 2d, Assignments, § 66, at 283-284).

As a final matter, we agree with the Court of Claims' conclusion that section five of the subcontract, whereby claimant agreed to be bound to Brickman "by all the obligations that the [State] assumes to [claimant] under the contract between them", merely imposed a duty upon claimant to compensate Brickman for delays, extra work and other losses resulting from claimant's actions—not the actions of the State.

The parties' remaining contentions have been considered and either found to be unavailing or need not be considered in light of our determination to dismiss the second cause of action.

Cardona, P. J., White, Spain and Carpinello, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, the State's motion is granted, and claimant's second cause of action is dismissed.