[799 NYS2d 485]

NORTH MOORE STREET DEVELOPERS, LLC, Appellant, v MELTZER/ MANDL ARCHITECTS, P.C., Respondent. (And a Third-Party Action.)

First Department, August 4, 2005

## APPEARANCES OF COUNSEL

*Barry B. LePatner & Associates LLP,* New York City (*Alexander F. Ferrini, Aaron N. Abraham* and *Elvira Barisano* of counsel), for appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, New York City (*Glenn J. Fuerth* and *Frank Santoro* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

Contrary to Supreme Court's reasoning in dismissing the third and fourth causes of action, the liquidating agreement that plaintiff relies upon in asserting these claims, in accordance with the well-settled standard for such agreements, does not prohibit plaintiff, as owner, from asserting its own claims in addition to the nonparty general contractor's pass-through claims against its architect, defendant herein. Nor does this well-settled standard prohibit plaintiff from assuming liability to the general contractor in the liquidating agreement, regardless of whether plaintiff had any independent contractual liability to the general contractor.

In 1998, plaintiff, the owner/developer, undertook a renovation and rehabilitation of its eight-story building. Pursuant to an April 24, 1998 written agreement, plaintiff retained defendant Meltzer/Mandl Architects to provide architectural and related design services for a fee of $615,000. Thereafter, by written agreement dated June 7, 1999, plaintiff retained nonparty R.C. Dolner, Inc. to perform the general contracting services for the project. Both parties and nonparty Dolner retained the services of numerous subcontractors, named as third-party defendants.

Plaintiff commenced this action in November 2001, alleging in the first two causes that it had sustained damages in the amount of $4.1 million due to defendant's breach of the April 1998 agreement and its professional malpractice. The third and fourth causes of action asserted similar claims on behalf of Dolner in the amount of $2.45 million.

The first and second causes of action alleged that defendant's breach of contract and negligence caused plaintiff to "(i) make substantial additional payments to the Contractor for change orders, as well as incur additional obligations for payment" due to defendant's errors and omissions; "and (ii) incur substantial additional expenses including, but not limited to, real estate taxes, mortgage interest, common charges, general conditions[,] costs and attorneys' fees." The third and fourth causes of action alleged that as a result of defendant's breach of contract and negligence, "the performance of the work by the Contractor

was delayed and impeded and was required to be performed in an inefficient, non-sequential, uneconomic and piecemeal manner causing the Contractor to incur additional and increased costs of construction for labor, supervision, materials, equipment and overhead." These causes further recited that "Plaintiff has entered into a Liquidating Agreement with the Contractor, providing inter alia that Plaintiff admits and acknowledges liability to the Contractor, that the amount of such liability shall be liquidated to the amount of recovery by Plaintiff in this action, and that Plaintiff may prosecute said Contractor's claims on its behalf."

As the record shows, in or about April 2001, plaintiff entered into a liquidating agreement with Dolner, by which plaintiff admitted and acknowledged, inter alia, liability to Dolner for increased costs due to certain defects, errors or omissions caused by defendant; that a portion of any recovery by plaintiff against defendant would be passed through to Dolner; and that the amount of such liability would be liquidated to the amount recovered by plaintiff in any action against defendant asserting Dolner's claims.

When the third-party defendants moved for dismissal of the third-party complaint, defendant cross-moved, inter alia, for summary judgment dismissing the third and fourth causes of action on the ground that they failed to state a cause of action as a matter of law, arguing that throughout the duration of the project, the owner and general contractor had blamed each other for causing the delays and cost overruns that were required to complete the project. Ultimately, the owner and general contractor entered into a completion contract in August 2001, wherein they agreed on terms to complete the outstanding work on the project, waiving any and all claims against each other subject to a "Liquidating Agreement." Defendant alleged that notwithstanding the Liquidating Agreement, it was clear that "the third and fourth causes of action [sought] to recover damages solely on behalf of [the general contractor]," and "as [the general contractor] has no cognizable claim against [defendant], [plaintiff] cannot bring [the general contractor's] claims on behalf of [the general contractor]."

Plaintiff opposed defendant's cross motion, arguing that the lack of privity between the architect and the general contractor did not bar it from asserting the general contractor's claims since the very purpose of a liquidating agreement is to bridge the privity gap. Plaintiff analogized the facts here to cases where

a general contractor confesses liability to an owner for damages caused by a subcontractor's delay in performing work on the project, thereby enabling the owner to proceed directly against the subcontractor. Here, plaintiff argued, the owner has accepted responsibility for the general contractor's damages caused by the owner's architect. In addition, plaintiff argued, even absent the liquidating agreement, the owner could assert the fourth cause of action for professional malpractice on the general contractor's behalf given the relationship, sufficiently equivalent to privity, that existed between the architect and the general contractor.

Supreme Court granted defendant's motion for partial summary judgment dismissing the third and fourth causes of action, finding (i) that the liquidation agreement was unenforceable because plaintiff had asserted its own claims against defendant and not just claims on behalf of Dolner, and (ii) that the complaint failed to allege any delay caused by plaintiff, and that such delay exceeded either 50 or 70 days in the aggregate, as required under plaintiff's contract with Dolner, for plaintiff to be liable for any delay or suspension of the work. We reverse.

The courts of New York and other jurisdictions* recognize liquidating agreements as a valid mechanism for bridging the privity gap between owners and subcontractors who sustain damages as the result of the others' actions (*see e.g. Bovis Lend Lease LMB v GCT Venture*, 285 AD2d 68 [2001]; *Barry, Bette & Led Duke v State of New York*, 240 AD2d 54 [1998], *lv denied* 92 NY2d 804 [1998]; *American Std. v New York City Tr. Auth.*, 133 AD2d 595 [1987]; *Schiavone Constr. Co. v Triborough Bridge & Tunnel Auth.*, 209 AD2d 598 [1994]; *Lambert Houses Redevelopment Co. v HRH Equity Corp.*, 117 AD2d 227 [1986]; *Ardsley Constr. Co. v Port of N.Y. Auth.*, 61 AD2d 953 [1978]; *Morse/Diesel, Inc. v Trinity Indus., Inc.*, 875 F Supp 165 [SD NY 1994], *revd on other grounds* 67 F3d 435 [2d Cir 1995]).

As the *Morse/Diesel* court explained, in applying New York law, liquidating agreements:

> "are commonly employed in the New York construc-

---

* In answering certified questions from the Fifth Circuit Court of Appeals as to Texas' recognition of pass-through liquidating agreements, the Texas Supreme Court set forth the law relating to pass-through claims in *Interstate Contr. Corp. v City of Dallas* (135 SW3d 605 [Tex 2004]), and discussed the positions of the 18 states that treat these claims favorably (Alaska, California, Florida, Georgia, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island and Virginia).

tion industry as a means to apportion liability among owners, general contractors, and subcontractors, among whom such efforts are otherwise hindered by a lack of contractual privity. Without question, they are sanctioned by the law of New York and accepted as a basis of recovery" (875 F Supp at 174-175).

The court noted that the sole recourse of an owner damaged due to delays caused by a subcontractor with whom it has no privity is to proceed against the general contractor who, pursuant to the general contract, is liable to the owner for damages due to the acts of the subcontractor. Assuming the owner recovers against the general contractor, the latter would then proceed against the subcontractor, bound under its subcontract to indemnify the general contractor for loss arising from its work. As the court explained, two such actions would be duplicative of each other, and wasteful of both public and private resources (*id.* at 174 n 13). To address such concerns, liquidating agreements are entered into, in which the general contractor, in effect, confesses liability to the owner and the two agree to liquidate the damages in whatever amount the general contractor can recover from the subcontractor by asserting the owner's claim with a provision for a pass-through of that recovery to the owner. "The subcontractor is left in basically the same position of having to defend against the general contractor and prove that it did not cause damage to the owner" (*id.*).

Liquidating agreements have three basic elements: (1) the imposition of liability upon a party for a third party's increased costs, thereby providing the first party with a basis for legal action against the party at fault, (2) a liquidation of liability in the amount of the first party's recovery against the party at fault, and (3) a provision for the pass-through of that recovery to the third party (*Bovis Lend Lease LMB v GCT Venture,* 285 AD2d at 70, *supra*). In *Bovis,* a prime contractor on a project restoring and renovating New York's Grand Central Terminal, having previously entered into a liquidating agreement with its subcontractors, sued the project owner and developer to recover, inter alia, damages incurred by the subcontractors that were caused by the owner's delay. In that agreement, the prime contractor had (i) admitted and acknowledged its liability to the subcontractors for the delay claims, (ii) liquidated the amount of liability, and (iii) obligated itself to recover such amounts on the subcontractors' behalf in the action against the owner and developer.

The liquidating agreement at issue here satisfies all three elements set forth in *Bovis* since plaintiff has (1) admitted and acknowledged liability to Dolner for certain damages arising out of defects, errors and omissions in the architectural services provided by defendant, (2) agreed to liquidate such liability in the amount it might recover on Dolner's behalf, and (3) obligated itself to pass through to Dolner the portion of the recovery it might recover on Dolner's behalf. Moreover, as was readily apparent in *Bovis*, mistakenly relied upon by Supreme Court for the proposition that plaintiff's maintenance of its own independent claims against defendant was fatal to its assertion of Dolner's claims, the plaintiff there had also asserted its own claims; only one cause of action in the *Bovis* complaint represented a pass-through claim.

Indeed, the other cases cited by Supreme Court, in support of its misguided notion that the assertion of independent claims renders a pass-through claim unsustainable, support the contrary proposition. In *Barry, Bette & Led Duke v State of New York* (240 AD2d 54 [1998], *supra*), the plaintiff, a general contractor, sought to recover against an owner for damages resulting from a five-month delay in completing a construction project and amended its complaint to assert a second cause of action on behalf of its subcontractor pursuant to an implied liquidating agreement between the plaintiff and the subcontractor seeking to recover the cost of additional work the subcontractor was required to perform. The Court dismissed the second cause of action, not because the plaintiff could not maintain its own as well as the subcontractor's cause of action, but rather because only an express—as opposed to implied—contractual undertaking to pass through a claim recovery gives rise to a liquidating agreement. As the Court noted, "liquidating agreements, which are generally enforceable, need not take any particular form. They may be memorialized in the subcontract or in a separate written agreement and may be assembled from several documents executed over a period of years" (*id.* at 56). Since the existence of an express liquidating agreement was not alleged, the Court refused to infer the existence of one.

*American Std. v New York City Tr. Auth.* (133 AD2d 595 [1987], *supra*), also cited by Supreme Court, offers no support for the proposition that under a liquidating agreement the party in privity with the purported wrongdoer may assert only the claims of the injured nonprivity entity. Rather, the *American Standard* court held that claims may be asserted pursuant to a

liquidating agreement "even though" the party in privity with the wrongdoer did not suffer damages of its own (*id.* at 596). No doubt, the argument rejected by that Court was that the plaintiff must assert its own claim to pursue a pass-through claim, the converse of the motion court's reasoning here.

Nor does *Lambert Houses Redevelopment Co. v HRH Equity Corp.* (117 AD2d 227 [1986], *supra*) support Supreme Court's determination that the liquidating agreement is unenforceable. The motion court cited *Lambert Houses* in support of the proposition that this is not a case where "the liquidating agreement bridges the gap in privity between subcontractor and owner, allowing the general contractor to withdraw as an active participant" (*id.* at 231), but the quoted language was taken out of context. In *Lambert*, the owner, not in privity with the subcontractors, was pursuing claims against them without the general contractor who was in privity and had liquidated its damages to the owner, and had agreed to assist in funding a portion of the case against the subcontractors. In response to the subcontractors' challenge to the enforceability of the liquidating agreement, this Court held that once the gap in privity was bridged by the use of a liquidating agreement between the owner and the general contractor, the latter was no longer required to play an active role in the litigation. Thus, *Lambert* never held that the party in privity must withdraw from active participation in a case prosecuted under a liquidating agreement.

As additional support for dismissal of the pass-through claims asserted in the third and fourth causes of action, Supreme Court held that in the absence of "actual contractual liability" of plaintiff to Dolner, the liquidating agreement is invalid. In so holding, Supreme Court quoted *Barry, Bette & Led Duke v State of New York* (240 AD2d at 57, *supra*): "Absent a showing of actual contractual liability in [the general contractor], there can be no liquidating agreement." According to Supreme Court, this "actual contractual liability" refers to the liability of plaintiff to Dolner based upon the owner/general contractor agreement between the parties. As is clear, however, from the discussion of the *Barry, Bette & Led Duke* decision, with respect to "actual contractual liability," the Court was distinguishing an actual from an implied liquidating agreement between the general contractor and subcontractor, and was not referring to an independent strain of owner liability to the subcontractor derived from the subcontractor's contract with the general contractor. It is sufficient that the general contractor agrees to assume li-

ability for the subcontractor's damages by way of a liquidating agreement.

Supreme Court also quoted from *Bovis Lend Lease LMB v GCT Venture* (285 AD2d at 71) that "absent a contractual commitment to the contrary, a prime contractor is not responsible for delays that its subcontractors incur unless those delays are caused by some agency or circumstances under the prime contractor's direct control." In setting forth this general rule, the *Bovis* court was merely discussing the rationale underlying the use of liquidating agreements. It was not creating a requirement that a prime contractor be responsible for the subcontractor's damages as a prerequisite to the enforceability of a liquidating agreement. Because a prime contractor is not liable to its subcontractors for delay it did not cause, the prime contractor entered into a liquidating agreement and assumed such liability in order to pursue a claim against the owner on behalf of the subcontractor. Otherwise, the prime contractor would be subject to the same lack of privity defense as its subcontractor.

The *Bovis* court, noting that general contractors may not sue on behalf of a subcontractor for additional costs caused by the owner's delays, and that subcontractors, lacking privity, are precluded from suing the owner directly, held that a liquidating agreement is designed to overcome such legal barriers and allow contractors to bring an action against the owner on behalf of their subcontractors. The Court went on to state:

> "Plaintiff's contracts with its subcontractors did indeed provide that plaintiff would not be liable for any additional costs incurred as a result of delays caused by [the owner]. Such a clause was consistent with the general rule that, absent a *contractual* commitment to the contrary, a prime contractor is not responsible for delays that its subcontractors incur unless those delays are *caused by some agency or circumstances under the prime contractor's direct control*. Here, however, [plaintiff] apparently assumed liability in an agreement subsequent to the original general contract and subcontracts. *There is no apparent reason why [plaintiff] could not have assumed liability in that manner*" (*id.* [emphasis added]).

Thus, contrary to Supreme Court's view, *Bovis* explicitly sanctioned the use of liquidating agreements even in the absence

of "actual contractual liability" between the contractor and subcontractor in the subcontract.

Even assuming, arguendo, the correctness of Supreme Court's holding that an independent contractual liability based upon the owner/general contractor agreement is required to support an enforceable liquidating agreement, the complaint asserts such a claim. Paragraph 21.2 of the owner/general contractor agreement clearly states that plaintiff is responsible to Dolner for delays caused by plaintiff in excess of 50 days, or 70 days in the aggregate. This includes, of course, delays caused by plaintiff and those under its agency and control, such as Meltzer/Mandl, its architect (*see Bovis,* 285 AD2d at 71). Significantly, in paragraph 10 of the complaint, plaintiff alleges that defendant's "breach of the Architecture Agreement and negligence during the Project caused a delay in the final completion of the Project for a period of approximately twelve (12) months," a period clearly in excess of 70 days. The complaint sets forth additional claims against defendant in paragraphs 26 and 33, in the third and fourth causes of action, which allege damages to Dolner as a result of defendant's negligence and breach of contract. Moreover, in paragraphs 27 and 34, plaintiff admits and acknowledges liability to Dolner, thereby providing a legitimate basis for Dolner's pass-through claims.

Given our determination that the liquidating agreement is valid and enforceable, we need not reach plaintiff's alternative argument that, even in the absence of a liquidating agreement, Dolner was entitled to assert a direct claim against defendant for professional malpractice based on Dolner's reliance on the latter's architectural services. Whatever other defect inheres in this argument, plaintiff fails to explain how, in the absence of a valid liquidation agreement, it would have standing to assert such a claim on behalf of Dolner.

Accordingly, the order of the Supreme Court, New York County (Sherry Klein Heitler, J.), entered October 21, 2003, which granted defendant's cross motion for partial summary judgment dismissing the third and fourth causes of action, should be reversed, on the law, with costs and disbursements, the cross motion denied and the third and fourth causes of action reinstated.

BUCKLEY, P.J., MAZZARELLI, WILLIAMS and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered October 21, 2003, reversed, on the law, with costs and disbursements, defendant's cross motion for partial summary judgment denied and the third and fourth causes of action reinstated.