OPINION OF THE COURT
Carolyn E. Demarest, J.
In this action by plaintiff RAD and DAprile Inc. also known as RAD & DAprile Inc. against defendant Arnell Construction Corp., defendant moves, under motion sequence number one, for an order: (1) pursuant to CPLR 3211 (a) (7), (5) and (1), dismissing plaintiffs verified complaint, with prejudice, on the grounds that the complaint fails to state a cause of action, plaintiff has failed to present its claims within the statutorily mandated time periods, and it has a defense based upon the documentary evidence; and (2) awarding attorneys’ fees and costs to it pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1.
Background
On June 22, 2001, the City of New York (the City), acting by and through the New York City Department of Sanitation (the DOS), awarded a public improvement construction contract (the prime contract) to defendant, a general contractor, whereby it agreed to provide general construction services to build two new sanitation garages for districts 1 and 4 located at 161 Varick Street, in Brooklyn, New York (the project). In furtherance of the prime contract, defendant, on August 22, 2001, entered into a subcontract with plaintiff, a masonry subcontractor, to perform certain masonry work (the subcontract).
*192 Paragraph 15 of the subcontract, in pertinent part, provided:
“The Subcontractor hereby agrees that no work shall be considered as extra hereunder unless, before said work shall have been done, a separate written estimate therefor shall have been submitted to the Contractor in the same manner as is provided in the Principal Agreement. If the Contractor and/or the Owner refuses to approve the estimate for extra work, the Subcontractor shall nevertheless perform expeditiously the work called for, and in that event, should the Owner refuse to give such approval, if the Subcontractor so desires, the Contractor shall institute suit on behalf of the Subcontractor for compensation for such work providing that any and all suit fees and reasonable attorney’s fees arising for such suit shall be borne by the Subcontractor. This clause in no way obligates the Contractor to pay the Subcontractor’s claim for extra work unless such work was first approved by the Owner.”
The bid documents indicated that work on the project was to be completed by defendant within a period of 42 months. Plaintiffs masonry work was to be completed by October 21, 2003, a period of 14.5 months, well before the completion of the entire project. Pursuant to the DOS-issued notice to proceed, work on the project was to commence on November 1, 2001. However, due to various delays and interferences impacting the project, plaintiff was allegedly wrongfully denied access to the project site and otherwise prevented from, hindered, and delayed in commencing and performing its work within the scheduled 14.5 months. Plaintiff was unable to commence its masonry work on the project until November 11, 2003, and was unable to complete its work until over two years after the scheduled completion date. Specifically, plaintiff’s final payment applications were for the period through September 30, 2005. Plaintiff claims that, as a result, it incurred extra and additional costs due to, among other things, a late start, denial of access to the project site, revisions to the construction sequence, stop work orders, extra work, contaminated and hazardous soils, and changed conditions. Plaintiff, by various notices dated February 1, 2002 through August 29, 2005, informed defendant of the delays, impediments, and interferences that caused it to incur extra and additional work, costs, and losses.
*193 In or about May 2002, plaintiff hired an outside claims consultant, Bethay Consultants Inc. (Bethay), to assist it in preparing a claim for the extra and additional work, costs, and losses arising from the aforementioned delays, impediments, and interferences, so that defendant could submit this claim to the City, pursuant to paragraph 15 of the subcontract. By letter dated June 4, 2002, and a second identical letter dated July 25, 2002, plaintiff complained to defendant that increases in its compensation under the subcontract were necessary due to the delays encountered. By letter dated August 9, 2002, defendant responded as follows:
“In response to your 7/25/02 letter requesting an increase to your contract due to delays, we have agreed to the following terms. Arnell will increase your contract by $100,000 to help offset your increased costs. Your revised contract amount will now be $3,100,000.00. [Plaintiffs] additional costs, due to delays, will be incorporated into [defendant’s] claims against the owner [i.e., the City] at the completion of the contract. Any money received in the settlement of the claim (for plaintiff) over the $100,000.00 will be forwarded to you.”
Plaintiff asserts that since, in consideration for plaintiff’s agreement to defer its claims against defendant, defendant agreed to incorporate plaintiff’s claims into its own claim against the City and advance $100,000 against any amounts recovered from the City on its pass-through claims, plaintiff did not pursue its claims against defendant. Plaintiff continued, however, to give defendant notice of the delays, impediments, and interferences resulting in extra and additional work, costs, and losses. By letter dated August 20, 2004, plaintiff informed defendant that, because the costs of its materials were increasing rapidly, it would be billing for increases in costs. By letter dated August 23, 2004, defendant responded, “whatever information you provide for said increases must become part of our claim against the owner for these added costs.”
On September 2, 2005, Bethay (which had also been retained by defendant as its claims consultant) finalized plaintiff’s claims for additional compensation and gave them to plaintiff for review and approval, advising it to submit them to defendant and to request that defendant submit these claims to the DOS on its behalf as soon as possible. By letter dated September 8, 2005, plaintiff submitted its claims for additional *194 compensation to defendant, and requested that it submit these claims to the DOS on its behalf as soon as possible.
After reviewing plaintiffs claims, Barry Aronowitz, defendant’s project manager, requested, on September 15, 2005, that plaintiff make modifications to that portion of its claim which related to certain steel problems since it could potentially negatively impact defendant’s claims, and, in further consideration of defendant’s assuming the obligation to submit plaintiff’s claims to the owner, plaintiff agreed to drop that part of its claim. Mr. Aronowitz also requested that plaintiff revise a schedule of its claim regarding loss of productivity, and plaintiff revised its claim, as requested, and resubmitted it to defendant on October 31, 2005. According to plaintiff, it was informed that, in January 2006, defendant submitted its own claims, which incorporated plaintiff’s claims and those of other subcontractors, to the City.
Thereafter, Andrew Feldman, the president of plaintiff, periodically spoke to Mr. Aronowitz and Harold Zarember, the president of defendant, to inquire as to the status of its claims. Mr. Feldman claims that Mr. Aronowitz informed him that plaintiff would be hearing something regarding its claims shortly and that no further action was necessary.
By letter dated December 23, 2008, Bethay advised plaintiff that defendant had retained an attorney to pursue the claims, Henry Goldberg, Esq., who wanted a new claims consultant, Jack Meneo, to become involved with the claims, and that this would probably take considerable time. Bethay further advised plaintiff, in this letter, that it was already over a year since substantial completion was reached, and that it could not offer any further information as to when defendant would be submitting the claims. At the request of Mr. Aronowitz, plaintiff forwarded a copy of its delay claims to Mr. Meneo on December 30, 2008.
On August 11, 2010, defendant filed a verified notice of claim against the City, alleging the various delays and interferences by the DOS and the City resulting in extra work, incorporating plaintiff’s claims in the amount of $2,099,192. On December 13, 2010, defendant commenced an action against the City and the DOS in the Supreme Court, New York County (Arnell Constr. Corp. v City of New York, Sup Ct, NY County, index No. 651491/2010) (the New York County action), seeking $15,092,471.40 on its own behalf and on behalf of plaintiff and other subcontractors, alleging the delays, interferences, and extra work on the project.
*195 By a decision and order dated May 7, 2012 in the New York County action, Justice Eileen Bransten denied a motion by defendant (which was the plaintiff in the New York County action) for partial summary judgment, denied a cross motion by defendants to dismiss the City and the DOS’ affirmative defenses that defendant’s claims were time-barred, and granted a cross motion by the City and the DOS to dismiss defendant’s complaint as time-barred. Justice Bransten held that article 56 of the prime contract established a statute of limitations period for claims against the City and the DOS requiring such claims to be commenced within six months after the date the Commissioner issued a certificate of substantial completion. She found that defendant had substantially completed its work on December 7, 2007, and that this six-month period was triggered on December 27, 2007, when the City forwarded to defendant notice of substantial completion, requiring it to bring its claims prior to June 27, 2008 in order for those claims to be timely.[1]
On March 21, 2014, plaintiff filed this action against defendant. Plaintiffs complaint alleges five causes of action, including a first cause of action for breach of contract related to its contract balance allegedly due on the project, a second cause of action for breach of defendant’s contractual duty with respect to plaintiff’s pass-through delay claims against the City and DOS, a third cause of action for breach of defendant’s fiduciary duty to present plaintiff’s claims diligently, a fourth cause of action for breach of contract based upon any delays caused by defendant’s own acts or omissions, and a fifth cause of action for quantum meruit. On August 29, 2014, defendant filed its instant motion to dismiss plaintiff’s complaint.
Discussion
In support of its instant motion, defendant argues that plaintiff’s breach of contract claims (in its first and fourth causes of action) are barred by the six-year statute of limitations of CPLR 213 (2). “[I]n construction cases a contractor’s claim accrues upon the substantial completion of its work” (645 First Ave. Manhattan Co. v Silhouette Drywall Sys., 212 AD2d *196 394, 395 [1st Dept 1995]; see also Phillips Constr. Co. v City of New York, 61 NY2d 949, 951 [1984], rearg denied 62 NY2d 646 [1984]; Superb Gen. Contr. Co. v City of New York, 39 AD3d 204, 204 [1st Dept 2007], lv dismissed 10 NY3d 800 [2008]). Thus, where an action for breach of a construction contract is not commenced within six years of substantial completion of the work, it is time-barred (see Phillips Constr. Co., 61 NY2d at 951; State of New York v Lundin, 60 NY2d 987, 989 [1983]; Mendelsohn v City of N.Y. [19th Precinct], 89 AD3d 569, 569 [1st Dept 2011], lv denied 19 NY3d 804 [2012]).
Here, plaintiff’s first cause of action for breach of contract seeks recovery of the balance of sums due under the subcontract and accrued against defendant upon substantial completion of its work under the subcontract, on September 30, 2005. Moreover, plaintiff’s breach of contract claims based upon the subcontract could not have accrued any later than December 27, 2007, when the City forwarded defendant notice of the substantial completion of the entire project. Therefore, since plaintiff filed this action against defendant on March 21, 2014, 6V2 years after defendant’s substantial completion of the project and, even more egregiously, 8V2 years after its own substantial completion of the project, its first breach of contract cause of action is time-barred (see CPLR 213 [2]).
Plaintiffs fourth cause of action for breach of contract seeks recovery for damages for delay resulting from defendant’s own acts and omissions in causing such delays. This claim, based upon the subcontract between plaintiff and defendant, also accrued upon plaintiff’s completion of its work on September 30, 2005 and is time-barred.
Plaintiffs second cause of action has been characterized by defendant as a claim, also based upon the subcontract, for the breach of the covenant of good faith and fair dealing in failing to diligently prosecute plaintiffs delay claims against DOS and the City. Defendant’s argument is largely founded on the language of paragraph 15 of the subcontract which obligates defendant, upon request of the subcontractor, to pursue unapproved extra work claims against the owner, but does not expressly include delay claims. Apart from its argument that paragraph 15 implicitly excludes delay claims and, in any event, plaintiff failed to meet the condition precedent of submit *197 ting a written estimate to defendant,[2] defendant contends this claim duplicates other breach of contract causes of action and must be dismissed. However, the gravamen of the second cause of action, as reflected in the pleading, is an independent claim based upon defendant’s alleged breach of a liquidating agreement, reflected in the letter of August 9, 2002, by which defendant became contractually obligated to “pass-through” plaintiff’s delay and extra work claims against the City and DOS (with which plaintiff was not in privity and, therefore, could not sue directly), in conjunction with defendant’s own claim for damages for delay and extra work caused by the City’s and DOS’s acts and omissions. The allegations regarding defendant’s lack of good faith and diligence in prosecuting these claims are pleaded in the context of a broadly-stated claim for breach of contract and do not constitute a duplicative claim as all contracts contain a covenant of good faith and fair dealing (see Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34 [1972]).
In opposition to defendant’s motion to dismiss this claim, plaintiff contends this claim is not time-barred as suit was timely commenced on March 21, 2014, within six years of June 27, 2008, the date on which the statute of limitations expired on defendant’s claims against the City and the DOS. Plaintiff points to the fact that it submitted its revised pass-through claims to defendant on or about October 31, 2005, more than two years before the project was deemed substantially completed by the City on December 7, 2007, and contends that defendant could and should have timely filed an action against the City asserting its claims, but failed to do so. Plaintiff argues that since the statute of limitations for suing the City and the DOS expired on defendant’s claim on June 27, 2008, that was the date on which defendant breached its agreement to present plaintiff’s pass-through claims to the City and the DOS by allowing the statute of limitations to expire and that is the date upon which its second cause of action accrued.
In response, defendant argues that there was no enforceable liquidating agreement or contractual pass-through agreement *198 by which it assumed liability for plaintiffs delay claims based upon delays caused by the DOS and the City and not defendant. Defendant points to the fact that paragraph 15 of the subcontract, which provided that it would institute a lawsuit for compensation against the owner on plaintiffs behalf, only pertained to “extra work,” as opposed to “delay damages,” and that plaintiffs claims herein relate solely to its recovery for delay damages and not for extra work. Citing Trataros Constr., Inc. v New York City Hous. Auth. (34 AD3d 451, 452 [2d Dept 2006]), Gemma Constr. Co. v City of New York (246 AD2d 451, 456 [1st Dept 1998]), and Huff Enters. v Triborough Bridge & Tunnel Auth. (191 AD2d 314, 317 [1st Dept 1993], lv denied 82 NY2d 655 [1993]), defendant notes that case law has distinguished between recovery sought for extra work versus delay damages. Defendant argues that the subcontract distinguished between extra work and delay damages since, in contrast to the extra work provision in paragraph 15, paragraph 12 of the subcontract specifically governed delay damages and provided that plaintiff “understands and agrees that the Contractor [defendant] shall not be liable for any damages or loss through any delay. . . of any other subcontractor and/or other contractors.” Such provision does not, however, speak to contractor’s possible liability for its own conduct in causing delay damages to a subcontractor, nor does paragraph 12 relate to defendant’s liability for delays caused by the owner, and is not, therefore, per se dispositive. Defendant asserts that since paragraph 15 did not apply to plaintiff’s delay claims, as a general contractor, it was not responsible for any delay damages caused by the DOS and the City, nor would it be required under the subcontract to institute suit on plaintiffs behalf. While defendant would not, in the absence of an express contractual undertaking, normally be responsible for delays caused by the owner unless it shared actual control over the circumstances which created such delay (see Triangle Sheet Metal Works v Merritt & Co., 79 NY2d 801, 802 [1991], rearg denied 79 NY2d 978 [1992]), there is such contractual undertaking here. It is unnecessary to determine the factual question as to the nature of the damages for which plaintiff seeks to recover, whether plaintiff’s claim is for “extra work” or for “delay,” as plaintiff relies on a separate agreement which provides an independent basis for plaintiff’s second cause of action.
Plaintiff contends that the subcontract was modified by the August 9, 2002 letter (the agreement), which constituted an *199 enforceable liquidating agreement or pass-through agreement by which defendant assumed the duty to assert its delay claims against the City. It is well-settled that liquidating agreements are “a valid mechanism for bridging the privity gap between owners and subcontractors who sustain damages as the result of the others’ actions” (North Moore St. Devs., LLC v Meltzer/Mandl Architects, P.C., 23 AD3d 27, 30 [1st Dept 2005]; see also Bovis Lend Lease LMB v GCT Venture, 285 AD2d 68, 69-70 [1st Dept 2001]; Barry, Bette & Led Duke v State of New York, 240 AD2d 54, 56 [3d Dept 1998], lv denied 92 NY2d 804 [1998]; American Std. v New York City Tr. Auth., 133 AD2d 595, 596 [2d Dept 1987]; Schiavone Constr. Co. v Triborough Bridge & Tunnel Auth., 209 AD2d 598, 599 [2d Dept 1994]; Lambert Houses Redevelopment Co. v HRH Equity Corp., 117 AD2d 227, 230-231 [1st Dept 1986]; Ardsley Constr. Co. v Port of N.Y. Auth., 61 AD2d 953, 954 [1st Dept 1978]). Generally, a liquidating agreement or pass-through agreement grants the general contractor a release of its liability to the subcontractor after the general contractor prosecutes the subcontractor’s pass-through claims against the owner and conveys any recovery to the subcontractor (see Schiavone Constr. Co., 209 AD2d at 599).
Liquidating agreements “need not take any particular form,” and “may be assembled from several documents executed over a period of years” (Barry, Bette & Led Duke, 240 AD2d at 56). Such liquidating agreements ordinarily limit the general contractor’s liability to the subcontractor to the amount actually recovered from the owner, but may also require the general contractor to make an additional payment to the subcontractor (see Schiavone Constr. Co., 209 AD2d at 599; John B. Pike & Son v State of New York, 169 Misc 2d 1037, 1039 [Ct Cl 1996]; see also Shomar Constr. Servs. v Lawman Constr. Co., 262 AD2d 956, 956 [4th Dept 1999] [limiting a subcontractor’s claims against the prime contractor to enforcing the liquidating agreement]).
“Liquidation agreements have three basic elements: (1) the imposition of liability upon the general contractor for the subcontractor’s increased costs, thereby providing the general contractor with a basis for legal action against the owner; (2) a liquidation of liability in the amount of the general contractor’s recovery against the owner; and, (3) a provision that provides for the ‘pass-through’ of that recovery to the subcontractor” (Bovis Lend Lease LMB, 285 AD2d at 70; see also North Moore St. *200 Devs., LLC, 23 AD3d at 31; Barry, Bette & Led Duke, 240 AD2d at 56).
There is no requirement that the liquidating agreement must be part of the original subcontract, and the general contractor may assume liability for pass-through claims of the subcontractor by way of a separate liquidating agreement (see Bovis Lend Lease LMB, 285 AD2d at 70; Schiavone Constr. Co., 209 AD2d at 599). Furthermore, since a general contractor is not liable to its subcontractors for delays that it did not cause, there also need not be “actual contractual liability” between the contractor and subcontractor in the subcontract as a prerequisite to the enforceability of a liquidating agreement (see North Moore St. Devs., LLC, 23 AD3d at 34-35). However, the general contractor, in entering into a liquidating agreement, must assume such liability in order to pursue a claim against the owner on behalf of the subcontractor (id. at 31).
Here, defendant argues that there was no liquidating agreement because it never acknowledged liability for plaintiff’s increased costs. However, in response to plaintiff’s requests for an increase in the amount to be paid to it due to delays, and to dissuade plaintiff from suing, defendant agreed, in the August 9, 2002 letter, to make an additional payment to plaintiff of $100,000, revising the subcontract to $3,100,000, to incorporate plaintiff’s claims for delay costs into its own claims against the City, and to pay plaintiff any money that it actually received in the settlement of the claims attributable to plaintiff’s claims, above the $100,000 sum paid. The clear implication of this settlement agreement is an acknowledgment by defendant of liability to plaintiff (see Joel D. Heusinger, Practical Concerns in Prosecuting Pass-Through Claims, 25 Construction Law 26, 28, 30 [spring 2005]; J.L. Simmons Co., Inc. v United States, 304 F2d 886, 890 [Ct Cl 1962] [recognition of prime contractor’s liability to subcontractor found to be inherent in the terms of the liquidating agreement]). The arrangement establishes a liquidation of such liability to $100,000, plus whatever additional compensation might be recovered from the City and DOS which would be passed through to plaintiff.
Plaintiff correctly argues that, by this agreement, defendant assumed a duty to prosecute its claims against the City and the DOS in good faith, and was required to commence the New York County action asserting those claims before the statute of limitations on its own claims expired. The contractual covenant of good faith and fair dealing, which is implied in *201 every contract, applies to a liquidating agreement, and generally requires the contractor to “take all reasonable steps so that the [subcontractor’s] right to an eventual recovery, if any, from the [owner] will be protected” (see Martin Mech. Corp. v Mars Assoc., 158 AD2d 280, 281 [1st Dept 1990]). Thus, a general contractor has “a duty to make a good faith effort to present [the subcontractor’s] claim to the [owner] in a fair and serious manner” (T. G. I. E. Coast Const. Corp. v Fireman’s Fund Ins. Co., 534 F Supp 780, 782 [SD NY 1982]; see also Shomar Constr. Servs., 262 AD2d at 956). This court recognizes the letter of August 9, 2002, as a classic liquidating agreement, enforceable at law.[3]
The issue remains, however, as to whether plaintiff’s breach of contract/breach of the covenant of good faith and fair dealing cause of action is viable as having been interposed within the statute of limitations, which is six years from accrual. The liquidating agreement necessarily contemplated that defendant’s completion of the entire project would precede any litigation of plaintiff’s claims and the contractual statute of limitations applicable to both parties under the agreement was, therefore, six months after issuance of a certificate of substantial completion as set forth in the prime contract. Justice Bransten determined, in her decision dismissing defendant’s action in New York County, that the certificate of substantial completion was issued by notification on December 27, 2007, that being the date the limitations period began to run. June 27, 2008 would, therefore, mark the expiration of the statute of limitations for the claims at issue, including those of plaintiff (Arnell Constr. Corp. v City of New York, Sup Ct, NY County, May 7, 2012, index No. 651491/10). Plaintiffs breach of contract cause of action, as asserted in the second cause of action, therefore, accrued on June 27, 2008.
It was defendant’s failure to timely commence the legal action required under the liquidating agreement that plaintiff claims constitutes defendant’s breach in performance of that contract. Accordingly, the statute of limitations for plaintiff’s second cause of action, based upon defendant’s breach of its obligations under the liquidating/pass-through agreement, commenced to run on June 27, 2008. Having delegated to defendant the authority to prosecute its claims against the owner, *202 and having relied thereon in deferring any attempt to prosecute its claims against defendant, it was only when defendant failed to act timely in performing its duty to plaintiff that plaintiff sustained injury as a result of defendant’s breach. Based upon the liquidating agreement set forth in the letter of August 9, 2002, plaintiff could not prosecute its own claims sooner as it had agreed to forbear such prosecution in deference to defendant’s rights against the owner.
“[T]he statute of limitations begins to run when a cause of action accrues (see CPLR 203 [a]), that is, ‘when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court’ ... In contract actions ... a claim generally accrues at the time of the breach” (Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d 765, 770 [2012], quoting Aetna Life & Cas. Co. v Nelson, 67 NY2d 169, 175 [1986]).
In light of the liquidating agreement, it cannot be said, as defendant argues, that the statute of limitations began to run upon plaintiff’s completion of its work on the project in September 2005 (cf. Matter of Bombardier Transp. [Holdings] USA, Inc. v Telephonies Corp., 14 AD3d 358, 359 [1st Dept 2005]). Rather, the cause of action accrued when the statute of limitations ran on plaintiff’s claims so that defendant could no longer perform its contractual duty. This action, commenced on March 21, 2014, is not, therefore, barred by the statute of limitations as to the second cause of action.
Defendant’s motion to dismiss plaintiff’s third cause of action for breach of fiduciary duty must be granted (see CPLR 3211 [a] [5], [7]). While “[a] contractor does not [generally] have a fiduciary duty to a sub-contractor except for that which is created by Lien Law Article 3-A” (Select Constr. Corp. v 502 Old Country Rd. LLC, 11 Misc 3d 1078[A], 2006 NY Slip Op 50609 [U], *3 [Sup Ct, Nassau County 2006]), here, plaintiff clearly alleges a claim based upon defendant’s fiduciary obligation to plaintiff as a trustee with respect to funds received in payment of a subcontractor’s performance upon a construction contract (see Lien Law § 70). Moreover, plaintiff was not able to directly assert its claims against DOS and the City for lack of privity and was limited to recovery from defendant, except for its right to file a lien against the property, which would also be *203 dependent on defendant’s right to receive additional funds on the contract. In addition to the statutory protection afforded plaintiff as a beneficiary under the Lien Law, such circumstances created a fiduciary relationship between plaintiff and defendant with respect to plaintiff’s right to compensation which is expressed in the liquidating agreement (see American Architectural, Inc. v Marino, 109 AD3d 773, 775 [2d Dept 2013]; AMG Indus. v Eckert Co., 279 AD2d 717, 720 [3d Dept 2001]). Under the terms of the liquidating agreement, plaintiff placed its trust in defendant to protect its interest and became dependent upon defendant’s good faith in doing so.
However, as plaintiff itself acknowledges that defendant’s breach “occurred on June 27, 2008 when it allowed its six-month limitation period [to lapse]” (plaintiff’s mem of law at 12), plaintiff’s fiduciary claim is time-barred (see Monaghan v Ford Motor Co., 71 AD3d 848, 849-850 [2d Dept 2010] [where “remedy sought is purely monetary in nature,” statute of limitations on cause of action for breach of fiduciary duty is three years]). Since the instant action was not commenced until March 21, 2014, the cause of action for breach of fiduciary duty must be dismissed.
Plaintiffs fifth cause of action for quantum meruit claim fails to state a cognizable cause of action since there is a valid and enforceable written agreement governing the disputed subject matter (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987]; Grace Indus., Inc. v New York City Dept. of Transp., 22 AD3d 262, 263 [1st Dept 2005], lv denied 6 NY3d 703 [2006]; Aviv Constr. v Antiquarium, Ltd., 259 AD2d 445, 446 [1st Dept 1999]; Alamo Contract Bldrs. v CTF Hotel Co., 242 AD2d 643, 643 [2d Dept 1997]; Schiavone Constr. Co., 209 AD2d at 600). Moreover, plaintiff’s quantum meruit claim is also time-barred (see CPLR 213 [2]; Erdheim v Gelfman, 303 AD2d 714, 714 [2d Dept 2003], lv denied 100 NY2d 514 [2003]). Consequently, plaintiff’s fifth cause of action for quantum meruit must also be dismissed (see CPLR 3211 [a] [5], [7]).
Defendant, in its motion, contends that plaintiff’s commencement of this action was frivolous, and seeks an order, pursuant to 22 NYCRR 130-1.1, awarding it attorneys’ fees and costs as sanctions. In light of the decision herein, plaintiff’s commencement of this action clearly was not frivolous conduct so as to warrant sanctions.
*204 Conclusion
Accordingly, defendant’s motion is granted to the extent that the first, third, fourth, and fifth causes of action are dismissed, and is denied as to the second cause of action and insofar as it seeks attorneys’ fees and costs pursuant to 22 NYCRR 130-1.1.

. Justice Bransten’s order incorrectly makes reference to “June 27, 2007” as the “expiration of the Article 56 limitations period” (Arnell Constr. Corp. v City of New York, Sup Ct, NY County, May 7, 2012, Bransten, J., index No. 651491/2010 at 13). This was obviously a typographical error as six months from December 27, 2007 is June 27, 2008.

. Defendant’s argument based upon plaintiff’s alleged failure to comply with a condition precedent to supply a written estimate of the extra costs under paragraph 15 of the subcontract appears somewhat disingenuous in light of the Bethay claim analysis supplied to defendant prior to plaintiff’s completion of its work in September 2005, which was modified at defendant’s request.

. Whether defendant diligently performed its obligation to plaintiff in presenting its claims to the City raises questions of fact which are not appropriately determined upon this motion to dismiss.